# FEDERAL COMMUNICATIONS COMMIS-SION v. STAHLMAN.

## No. 127.

District Court of the United States for the District of Columbia.

Aug. 14, 1941.

Telford Taylor, Gen. Counsel, Thomas E. Harris, Asst. Gen. Counsel, Nathan H. David, and Harry M. Plotkin, all of Washington, D. C., for applicant.

Elisha Hanson, of Washington, D. C., for respondent.

MORRIS, District Judge.

The Federal Communications Commission issued a subpoena to the respondent, directing him to appear before the Commission at a time and place stated, and to testify concerning matters being investigated by the Commission under orders issued by it designated as numbers 79 and 79-A. These orders direct an investigation to determine what statement of policy or rules, if any, should be issued concerning applications for broadcast stations with which are associated persons also as-

sociated with the publication of one or more newspapers. (Order 79-A, supplementing the original order, states certain questions more specifically with respect to the advantages and disadvantages of such joint association.) The respondent is a newspaper publisher who has been the president of prominent newspaper publishers' associations and a member of the Radio Committee of the American Newspaper Publishers' Association. He is, therefore, considered eminently qualified to furnish information which would be helpful to the Commission in its investigation. The respondent declined to appear responsive to the subpoena. He was directed to show cause in these proceedings why he should not be required to comply with the subpoena. In his answer, he challenges the authority of the Commission to conduct the investigation in question and, therefore, the power of the Commission to issue the subpoena in question. It is asserted that the only purpose of the investigation would be to bar persons, firms or corporations engaged in the newspaper publishing business from engaging in the radio broadcasting business, and that this would be an unlawful enlargement by the Commission of the limitations contained in the Communications Act of 1934, as amended, 47 U.S.C.A. § 151 et seq. It is insisted that such general investigation transcends the powers of the Commission over licenses for broadcasting stations as defined by the Supreme Court in Federal Communications Commission v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869, and offends the principle announced by the Supreme Court in the case of Harriman v. Interstate Commerce Commission, 211 U.S. 407, 29 S.Ct. 115, 53 L.Ed. 253.

Section 403 of the Communications Act, 47 U.S.C.A. § 403, provides in part as follows: "§ 403. The Commission shall have full authority and power at any time to institute an inquiry, on its own motion, in any case and as to any matter or thing concerning which complaint is authorized to be made, to or before the Commission by any provision of this Act [chapter], or *concerning which any question may arise under any of the provisions of this Act* [chapter], or relating to the enforcement of any of the provisions of this Act [chapter]." (Italics supplied.)

Section 309(a) of the Act, 47 U.S.C.A. § 309(a), provides: "§ 309. (a) If upon examination of any application for a station license or for the renewal or modification of a station license the Commission shall determine that public interest, convenience, or necessity would be served by the granting thereof, it shall authorize the issuance, renewal, or modification thereof in accordance with said finding. In the event the Commission upon examination of any such application does not reach such decision with respect thereto, it shall notify the applicant thereof, shall fix and give notice of a time and place for hearing thereon, and shall afford such applicant an opportunity to be heard under such rules and regulations as it may prescribe."

It was stated by the Supreme Court, in the Sanders Brothers case, supra, that the Act recognizes that broadcasters are not common carriers; that the field of broadcasting is one of free competition; that the Act does not essay to regulate the business of the licensee; and that the field is open to anyone, provided there be an available frequency over which he can broadcast without interference to others, if he shows his competency, the adequacy of his equipment, and financial ability to make good use of the assigned channel. It is also expressly stated, however, in that case [309 U.S. 470, 60 S.Ct. 697, 84 L.Ed. 869]: "An important element of public interest and convenience affecting the issue of a license is the ability of the licensee to render the best practicable service to the community reached by his broadcasts."

It is hardly to be questioned that, in the case of any particular application, especially if there are competing applications, consideration may properly be given to the advantageous situation which one applicant may have by reason of his ability to more easily and accurately gather news and broadcast the same by reason of association with news gathering agencies of the press. If that be so, and it is not questioned by the respondent here, it is difficult to understand why the Commission cannot by the instant investigation undertake to fully and accurately inform itself concerning all of the advantages and disadvantages, if any, of such joint association, and thus be equipped to more intelligently determine the question of public interest and convenience presented when such factors are present. The Act authorizes the Commission to make recommendations for proposed legislation ger-

mane to the field which the Act gives it the power to regulate. Certainly such recommendations should not be made without diligently undertaking to secure relevant data and the informed thought of those likely to `be affected. The surest safeguard against uninformed and arbitrary action is to be found in securing information from those best qualified to know the results of any governmental action. Certainly, until such action, if any, be taken, its constitutionality cannot be weighed and determined by a court, and, indeed, no presumption is to be indulged in that any action will be taken that is unconstitutional; nor is it to be presumed that the respondent will be required to give testimony of an irrelevant or privileged nature. The inquiry should be conducted fairly and reasonably, and it must be presumed that it will be. The authority of the Commission under the Act here involved is broader than the provisions which were challenged in the Harriman case, supra, and so I do not believe that the question here is controlled by that case.

An order will be entered requiring the respondent to appear before the Federal Communications Commission, or an officer properly designated by it, to testify concerning the matters being investigated under Orders No. 79 and 79-A.