VANCE v ANANICH

Docket No. 73152. Submitted November 9, 1984, at Lansing.—Decided September 30, 1985.

The City of Flint, by charter, created the post of city ombudsman and gave to that official the power to subpoena witnesses. James D. Ananich, in his capacity of Flint ombudsman, issued and had served upon Patricia Vance a subpoena requiring her to appear in his office to give testimony. Vance filed a petition in Genesee Circuit Court alleging that Ananich was without lawful authority to issue the subpoena and seeking that the subpoena be quashed and Ananich be ordered to cease and desist from issuing subpoenas. The trial court, Thomas C. Yeotis, J., following a show cause hearing, held that the defendant had not been lawfully empowered to issue subpoenas and granted the requested injunctive relief. Defendant appealed.
*Held:*

1. The power to issue a subpoena arises only from an express grant by the Legislature or where that power is essential to the fulfillment of some statutorily mandated objective.

2. While the home rule cities act does not specifically provide that home rule cities shall have the power to vest in a city ombudsman the authority to issue subpoenas, that act does grant sufficiently broad powers to home rule cities to warrant a finding that the power to issue subpoenas may be inferred from the powers granted, since it cannot be said that the granting of the power to issue subpoenas is contrary to any other statutory or constitutional mandate.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Witnesses §§ 9-13.
    See the annotations in the ALR3d/4th Quick Index under Subpoena.
[2, 3, 4] Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 126-138.
    Determination as to good faith and abolition of public office or employment subject to civil service or merit system. 87 ALR3d 1165.
[5] Am Jur 2d, Court §§ 65, 66.
    Inherent power of court to compel appropriation or expenditure of funds for judicial purposes. 59 ALR3d 569.

M. R. Stempien, J., dissented. He would hold that power to issue subpoenas should be found only where there is a specific grant of that power by the Legislature. Since the Legislature made no such grant of authority, the judiciary should not invade the province of the Legislature by determining that such power exists by implication. He would affirm the trial court's granting of injunctive relief prohibiting the Flint ombudsman from issuing subpoenas.

## Opinion of the Court

1. Witnesses — Subpoenas — Administrative Agencies.

The power to issue a subpoena, in general, must be expressly conferred by statute and, in the absence of a specific grant of authority, an administrative agency or official has no power to issue a subpoena; where the power to issue subpoenas is not expressly conferred, that power will not be implied unless essential to fulfillment of the objective of a statute.

2. Municipal Corporations — Home Rule Cities Act — Legislative Intent — Judicial Construction.

The home rule cities act was intended to secure a greater degree of home rule to cities and to confer on the cities almost exclusive right in the conduct of municipal affairs; to that end, the act is to be liberally construed, and the same presumption of constitutionality applies to a city ordinance as to a state statute (MCL 117.1 et seq.; MSA 5.2071 et seq.).

3. Municipal Corporations — Home Rule Cities Act — Subpoenas — Ombudsmen.

The grant of power under the home rule cities act is broad enough to allow a city to grant by ordinance to the city's ombudsman the power to subpoena witnesses.

## Dissent by M. R. Stempien, J.

4. Municipal Corporations — Subpoenas — Home Rule Cities Act — Ombudsmen.

*Home rule cities do not have the authority to empower a city ombudsman to issue subpoenas, since the home rule cities act does not specifically grant to cities such authority, such authority is not reasonably inferable from the powers granted to home rule cities by the Legislature, and there is nothing to suggest that the Legislature intended to grant to home rule cities the authority to empower local officials with the right to issue subpoenas (MCL 117.1 et seq.; MSA 5.2071 et seq.).*

5. COURTS — JUDICIAL FUNCTION.
   *It is not the judiciary's function to legislate; the judiciary must interpret the law, not write it.*

*Howard R. Grossman,* for defendant.

Before: DANHOF, C.J., and BEASLEY and M. R. STEMPIEN,* JJ.

BEASLEY, J. This case presents an issue of first impression in Michigan which involves whether a municipal ombudsman may subpoena witnesses to appear before him. In fact, the whole matter of ombudsmen is of relatively recent origin in Michigan. Nationally, "ombudsmania" in the United States, which is defined as the emerging and growing ombudsman phenomenon, is sometimes said to date from 1966,[1] when Walter Gellhorn published his seminal works on the subject.[2] In the broad sense, the ombudsman concept is said to spring from the question of how best to *inquire* fairly and quickly into asserted official impropriety or insensitivity.

Some writers view the ombudsman concept as an informal procedural system which is in competition with our traditional adversary system for the resolution of governmental grievances. Those who believe in the ombudsman concept are likely to place limitations on the spread of adversary proceedings into every corner of the administrative law cupboard, as has occurred under the aegis of constitutional due process. Since we seem to be reaching the realization that use of the adversary

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Verkuil, *The Ombudsman and the Limits of the Adversary System,* 75 Columbia Law Rev 845 (1975).

[2] W. Gellhorn, *Ombudsman and Others: Citizens' Protectors in Nine Countries* (Cambridge, Harvard University Press, 1966), and W. Gellhorn, *When Americans Complain: Governmental Grievance Procedures* (Cambridge, Harvard University Press, 1966).

process is, in some areas, bad social policy, perhaps the time has come to give the ombudsman concept a chance.

In the within case, defendant, James D. Ananich, in his capacity as ombudsman for the City of Flint, appeals as of right from a circuit court injunction permanently prohibiting him from issuing subpoenas.

Defendant is the ombudsman of the City of Flint and, in that capacity, he served plaintiff, Patricia Vance, with a subpoena to appear at his office on January 10, 1983, for the purpose of giving testimony. On January 5, plaintiff filed in circuit court a petition to quash the subpoena, alleging that defendant was without lawful authority to issue it. Following a show cause hearing, the circuit court granted plaintiff's petition and ordered defendant to "cease and desist from issuing subpoenas".

On appeal, defendant argues that conferring the power to issue an administrative subpoena upon the ombudsman was a valid exercise of permissive municipal powers under the home rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.* In general, the power to issue a subpoena must be expressly conferred by statute and, in the absence of a specific grant of authority, an administrative agency or official has no power to issue a subpoena.[3] Subpoena power not expressly conferred will not be implied unless essential to fulfillment of the objectives of a statute.[4]

Section 3-505 of the Charter of the City of Flint vests the city's ombudsman with subpoena power:

"A. The Ombudsman may request and shall be given necessary assistance and information by each agency.

[3] 73 CJS, Public Administrative Law & Procedure, § 82, pp 563-564.

[4] 73 CJS 564, citing *Combs v Lipton,* 44 Misc 2d 467; 254 NYS2d 143 (1964).

"B. The Ombudsman may subpoena witnesses, administer oaths, take testimony, require the production of evidence relevant to a matter under investigation, enter and inspect premises within the control of any agency during regular business hours, and establish rules of procedure in accordance with Section 1-801 of this Charter."

The Flint City Charter was adopted pursuant to the home rule cities act. That act provides for certain mandatory provisions that all city charters must contain and also for other permissible provisions, which city charters may contain. The act also contains some express limitations on city power. The question of whether a city ombudsman has subpoena power involves neither a mandatory provision nor an express limitation. The issue in this case is whether it is a permissible exercise of municipal power. Section 4-j of the home rule cities act provides in pertinent part:

"Each city may in its charter provide:
"(1) For the establishment of any department that it may deem necessary for the general welfare of the city, and for the separate incorporation thereof: Provided, however, That these provisions shall not be construed to extend to and include public shcools;

*    *    *

"(3) For the exercise of all municipal powers in the management and control of muncipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state." MCL 117.4j; MSA 5.2083.

It is this section that defendant contends gives cities the power of administrative subpoena.

Cases construing the home rule cities act have not been altogether consistent as to the scope of powers granted to the cities. *People v Sell,*[5] quoting from earlier decisions, explained the change in city government which resulted from the home rule cities act:

" 'The new system (referring to the home rule act) is one of general grant of rights and powers, subject only to certain enumerated restrictions, instead of the former method of only granting enumerated rights and powers definitely specified. We must assume the act was passed with that intent and construe it accordingly.' "

The act was intended to secure a greater degree of home rule and to confer almost exclusive right in the conduct of municipal affairs to the cities themselves. The act is to be liberally construed, and the same presumption of constitutionality applies to a city ordinance as to a state statute.[6] *Sell* went on to state: "Except as limited by the Constitution or by statute, the police power of Detroit as a home rule city is of the same general scope and nature as that of the State."[7]

In the within case, the trial court held that the home rule cities act granted the cities only those powers that are essential to local self-government, citing *Dooley v Detroit,*[8] *Home Owners' Loan Corp v Detroit,*[9] and *Dawley v Ingham Circuit Judge.*[10] However, in *Dooley,* in addition to stating that powers exercised by home rule cities should be essential, the Court also went on to state that every power exercised by a city need not be specifi-

---

[5] 310 Mich 305, 313; 17 NW2d 193 (1945).

[6] 310 Mich 313-314.

[7] 310 Mich 315.

[8] 370 Mich 194; 121 NW2d 724 (1963).

[9] 292 Mich 511; 290 NW 888 (1940).

[10] 242 Mich 247; 218 NW 766 (1928).

cally delegated by legislative grant. In *Dawley,* in which the Court sustained the power of the City of Lansing to pass a zoning ordinance, the Court stated:

"It is fundamental that the legislature has power to delegate to cities authority to enact such ordinances as are essential or incident to local governmental functions."[11]

In holding that administrative subpoena power is not essential to city government, the trial court in the instant case placed much emphasis on the potential for abuse of subpoena power by the ombudsman and of a lack of standards controlling its use. As indicated, in Michigan, the ombudsman concept is of relatively recent origin. In part, it represents an effort to bring the bureaucracy under better public scrutiny and to give citizens a means to be heard regarding minor grievances against government. On the other side of the coin, an ombudsman lacking in judgment could unfairly harass and impede public officials, as the trial court suggests.

We view the ombudsman procedure as an innovative, experimental idea and believe that it should be given a chance to see how it works. In that way, the Legislature will be in a better position to decide whether to continue and expand the ombudsman concept or whether to limit and terminate the powers of the ombudsman. If the Legislature is to receive that opportunity, the ombudsman must be permitted to exercise subpoena power. Otherwise, the ombudsman could become a kind of toothless tiger, as ineffective as a nonvoting member of a debating society. In this case, no finding has been made that the subpoena power

[11] 242 Mich 249.

exercised herein was being abused, just that it might be in the future.

While, as the trial court stated, no express grant of administrative subpoena power can be found in the home rule cities act, there is statutory authority which supports such a power, at least by analogy. In MCL 88.18; MSA 5.1714, the Legislature provided the city councils of fourth class cities with a subpoena power to compel the attendance of witnesses pursuant to an investigation. Likewise, the Legislature has specifically allowed county boards of supervisors to issue administrative subpoenas in aid of investigations.[12]

The home rule cities act was intended to confer upon the cities almost exclusive rights in the conduct of their affairs. As stated, its provisions are to be liberally construed. Only those local provisions in conflict with the constitution or state statutes should be found invalid. Since there is no constitutional or statutory authority which would invalidate municipal administrative subpoena power, and the act is to be liberally construed, we find that the home rule legislation authorizes issuance of subpoenas, as was done by the ombudsman in this case.

In summary, we believe that the home rule cities act allows the establishment of an ombudsman office by the City of Flint. Because we view this procedure as being within the lawful scope of the Flint City Charter and also a potentially promising alternative method of governmental grievance resolution, we decline to find unlawful the action of the city in equipping that office with the appropriate powers necessary to effectively carry out its objectives, *i.e.*, administrative subpoena power. Thus, we find support for this conclusion in

[12] MCL 46.3; MSA 5.323.

analogous statutes and in the policy objectives of the home rule cities act.

Finally, we would welcome action by the Legislature specifically dealing with ombudsmen, their powers and their limitations. Particularly, we would request expression of intention by the Legislature relative to issuance of subpoenas by ombudsmen. In holding that the statutes inferentially permit ombudsmen to lawfully issue subpoenas, we do not decide the limits on the purposes for which such subpoenas may be issued, except to indicate that their purposes must be within the parameters of the ombudsman's charter powers. For these reasons, we vacate the injunction issued by the trial court.

Reversed.

DANHOF, C.J., concurred.

M. R. STEMPIEN, J. *(dissenting).* I respectfully dissent.

Defendant appeals as of right from a circuit court injunction ordering him to "cease and desist from issuing subpoenas". Defendant is the ombudsman for the City of Flint, a home-rule city. In that capacity, defendant subpoenaed plaintiff to appear in defendant's office for the purpose of giving testimony. Plaintiff filed a petition with the circuit court to quash defendant's subpoena, claiming that defendant lacked the legal authority to issue subpoenas. The trial court correctly ruled that subpoena power is not essential to the management or administration of city government under the home rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.*

The majority first concludes that the ombudsman concept should not be impeded and, then, strains logic to reach the erroneous result that the

home rule cities act permits a home-rule city to grant subpoena power in its ombudsman.

Clearly, the home rule cities act is silent on the granting of subpoena power to home-rule cities. This Court should hold that no subpoena power exists in home-rule cities without that expression of intention by the Legislature, which the majority says it would welcome.

The majority concedes that "[s]ubpoena power not expressly conferred will not be implied unless essential to fulfillment of the objectives of a statute". But, from there, the majority opines that, because we should liberally construe the home-rule cities act, we should find implicit therein the power to issue subpoenas. I cannot agree.

In *Dooley v Detroit*, 370 Mich 194, 210; 121 NW2d 724 (1963), the Supreme Court held that the power of home-rule cities is not unlimited, stating: "[H]ome-rule cities do not possess plenary powers and may not, absent legislative grant, assume powers not essential to local self-government."

Accordingly, unless the subpoena power is "essential to local self-government", home-rule cities may not assume such power. No showing has been made in this case that subpoena power is essential to city management or administration. Nor can the majority point to any authority which articulates the precept that a city ombudsman without subpoena power cannot effectively function. By the very nature of an ombudsman's duties, the power to subpoena witnesses is not an essential element of those duties. The duty of an ombudsman to investigate, which is at issue in this case, can be carried out without such power. Whether or not a local government ombudsman is armed with the naked power of subpoena does not relate to the ombudsman's power to investigate, but actually

deals with the manner in which the investigation will be carried out.

A grant of subpoena power is not reasonably inferable from the language of § 4j of the home rule cities act. On that point, the majority simply states the unsupported assertions that "perhaps the time has come to give the ombudsman concept a chance" and further that, "[i]f the Legislature is to receive [the] opportunity [to decide whether to continue and expand the ombudsman concept or to limit and terminate the powers of the ombudsman], the ombudsman must be permitted to exercise subpoena power". The obvious legal fallacy in my brother jurists' conclusions on that point is that the decision they make is constitutionally one not for the courts, but rather constitutes a clear act of legislation. The substance of such a ruling consists more of judicial legislation of what jurists might wish the law to be, than of a judicial determination of the intent of the drafters of the statute in question here.

Legislative history in Michigan demonstrates that subpoena power is not something routinely granted to local officials by the Legislature. Indeed, in its attempt to infer "by analogy" some statutory authority to provide this power, the majority cites only one statute which does grant subpoena power to a local governmental official; namely, the mayor of fourth-class cities, and even then *only* if the mayor is requested by the city council to issue same. See MCL 88.18; MSA 5.1714. No other statute has been cited by the majority to show that other local units of government, other than fourth-class cities in special circumstances, possess the subpoena power. Thus, I cannot see how the power to issue subpoenas is "essential to local self government".

This legislative history evidences the Legisla-

ture's intent to grant subpoena power only in limited circumstances, and then only if the use of that power is overseen by others. That is particularly clear in view of the many legislative proposals for granting subpoena power to government officials that die for lack of support in every legislative session. Another example of legislative intent to limit the use of subpoena power is in the Administrative Procedures Act of 1969, MCL 24.101 *et seq.;* MSA 3.560(101) *et seq.* It provides that only agencies "authorized by statute" may issue subpoenas, MCL 24.273; MSA 3.560(173). That language states quite explicitly the Legislature's intent to delimit the authority of the state's agencies to issue subpoenas. Thus, it is not essential even to state governmental agencies, let alone to local governmental agencies, to have subpoena power, absent judicial oversight. Likewise, I find the fact that not even the Attorney General of the State of Michigan has been granted this imposing power by the Legislature as illustrative of the legislative intent over the years that, unless expressly granted by the Legislature, subpoena power does not exist.[1]

It is my firm conviction that the power to issue subpoenas is such a strong vehicle for abuse of the liberty of individual citizens, particularly in the heated political arena of local government, that, if it is to be granted, it must be expressly granted by the Legislature. Thus, if the Legislature had intended that local units of government, no matter how classified, should exercise such power, then it would have manifested this intention expressly in a statute, in this case in the home rule cities act.

[1] See the Occupational Code, specifically, MCL 339.503; MSA 18.425(503), where it indicates that the department of licensing and regulation lacks the power to issue subpoenas during its investigations of complaints filed under the code; the department must instead ask the Attorney General to petition the circuit court to issue any subpoenas.

It is not the judiciary's function to legislate. The judiciary must interpret the law, not write it.[2] Because the home rule cities act is silent on the question of subpoena power, I see the majority writing legislation. Simply stated, if the power to issue subpoenas is not found in the act, then it is not there to be exercised. By this Court's saying that subpoena power exists, when the act does not expressly provide for that power, the Court is legislating. I cannot subscribe to the Court's being placed in the role of "filling in the blanks" in legislation. I subscribe to the concept of separation of powers. See Const 1963, art 3, § 2.

By indulging in judicial legislation, this Court usurps the constitutional powers of the Legislature. Such action violates the basic concept of our constitutional government. Its practice by the courts removes the initiation of the decision-making process on politically charged issues from the political arena of the legislative process, where the initiation of legislation is constitutionally placed, and unwisely places it in the most arbitrary and politically inaccessible branch of government, that is, the court. Judicial legislation is not only unwise judicial policy, but its practical effect is to erode the trust of the people in the constitutional separation of powers that guarantees to them that their basic concerns of citizenship will initially be addressed by those elected legislators who are the most accountable to them.

In my opinion, this case is a classic example of a situation in which the defendant should be soliciting votes from the Legislature, rather than invit-

[2] See *e.g., Northwood Properties Co v Royal Oak City Inspector,* 325 Mich 419, 423-424; 39 NW2d 25 (1949); *Wickham v Carlton Twp School District No 2,* 325 Mich 94, 98; 37 NW2d 770 (1949); *Ford Motor Co v Unemployment Compensation Comm,* 316 Mich 468, 473; 25 NW2d 586 (1947); *Crooke v Holland Furnace Co,* 200 Mich 192, 195-196; 166 NW 1013 (1918).

ing this Court to create a power not expressly granted in the statute that the Legislature has time and again considered.

Finally, a few questions not answered by the majority opinion should be posed: (1) How and by whom is the ombudsman's power to issue subpoenas to be enforced? (2) Can the ombudsman issue warrants for the arrest of the recalcitrant subpoenaed person? (3) Can a home-rule city now also create an office which could issue search warrants?

Under the guidelines stated by the Supreme Court in *Dooley v Detroit, supra,* I vote to affirm the trial court's order against defendant to "cease and desist from issuing subpoenas".