ANONYMOUS v ATTORNEY GRIEVANCE COMMISSION

Docket No. 78874. Argued April 8, 1987 (Calendar No. 9). Decided
    April 19, 1988.

The Attorney Grievance Commission, during the period of investi-
    gation of a certain attorney, but before the filing of a formal
    complaint by the grievance administrator, issued a subpoena
    duces tecum, directing the attorney under investigation to
    appear before the grievance administrator to give evidence and
    to bring with him certain records. The attorney filed a com-
    plaint for mandamus in the Supreme Court, which the Court
    treated as a complaint for superintending control, challenging
    the authority of the commission to issue the subpoena.

    In an opinion by Justice BOYLE, joined by Chief Justice RILEY
    and Justices BRICKLEY and GRIFFIN, the Supreme Court *held:*

    The rules of professional disciplinary procedure vest investi-
    gative power in the Attorney Grievance Commission for the
    protection of the public, the courts, and the legal profession.
    Essential to the investigatory function of the commission is the
    power to subpoena an attorney who is the subject of a request
    to investigate prior to the issuance of a formal complaint by
    the Attorney Discipline Board. The power is also consistent
    with the plain meaning of the professional disciplinary rules.

    1. The power of the grievance administrator to investigate
    alleged misconduct of attorneys is distinct from the power to
    prosecute complaints authorized by the Attorney Grievance
    Commission. The authority to investigate is not limited to
    misconduct alleged in a request to investigate, but extends to
    any alleged misconduct and is consistent with the prescription
    of the disciplinary rules that the administrator has both the
    power and the duty to investigate misconduct. In this case,

REFERENCES

Am Jur 2d, Attorney at Law §§ 93-95.
Testimony before or communications to private professional soci-
    ety's judicial commission, ethics committee, or the like, as privi-
    leged. 9 ALR4th 807.
Confidentiality of proceedings or reports of judicial inquiry board or
    commission. 5 ALR4th 730.

there was no impropriety on the part of the administrator in the investigation of the plaintiff's client trust accounts.

2. The Attorney Grievance Commission, the grievance administrator, or the Attorney Discipline Board may issue subpoenas in the name and under the seal of the board. Under the disciplinary rules, a matter need not be pending at the time a subpoena is issued. In addition, any meaningful investigation by the commission must be completed prior to the service of a complaint.

3. There is nothing in the rules of professional disciplinary proceedings which provides, nor are there policy reasons which suggest, that an attorney-respondent may not also be a witness or that a respondent may not be subpoenaed prior to service of a complaint. Under the rules, a liberal construction is required for the protection of the public, the courts, and the legal profession and is consistent with the constitutional duty of the Court and the professional responsibilities of the members of the bar.

Order of superintending control denied.

Justice LEVIN, joined by Justices CAVANAGH and ARCHER, dissenting, stated that the court rule permitting the issuance of subpoenas by the Attorney Grievance Commission to require the appearance of a witness and the production of documents does not apply to an attorney under investigation. An attorney under investigation may not be required to appear, testify, or produce documents before a hearing on the complaint. In this case, the challenged subpoena was not directed to the alleged misconduct of the attorney under investigation, but to suspicions of uncharged misconduct. The complaint for superintending control should be granted, and the subpoena issued to the plaintiff quashed.

1. ATTORNEY AND CLIENT — ATTORNEY GRIEVANCE COMMISSION — PRE-COMPLAINT SUBPOENAS.

The rules of professional disciplinary procedure vest investigative power in the Attorney Grievance Commission for the protection of the public, the courts, and the legal profession; essential to the investigatory function of the commission is the power to subpoena an attorney who is the subject of a request to investigate prior to the issuance of a formal complaint by the Attorney Discipline Board (MCR 9.109[A]).

2. ATTORNEY AND CLIENT — ATTORNEY GRIEVANCE ADMINISTRATOR — POWER TO INVESTIGATE.

The authority of the grievance administrator to investigate is not limited to misconduct alleged in a request to investigate, but

extends to any alleged misconduct and is consistent with the prescription of the disciplinary rules that the administrator has both the power and the duty to investigate misconduct (MCR 9.109).

3. ATTORNEY AND CLIENT — ATTORNEY GRIEVANCE COMMISSION — PRE-COMPLAINT SUBPOENAS.

The Attorney Grievance Commission, the grievance administrator, or the Attorney Discipline Board may issue subpoenas in the name and under the seal of the board; under the disciplinary rules, a matter need not be pending at the time a subpoena is issued (MCR 9.115[I][1]).

*Willingham & Coté, P.C.* (by *John L. Coté* and *Curtis R. Hadley*), for attorney under investigation.

*Michael Alan Schwartz,* Grievance Administrator, for Attorney Grievance Commission.

BOYLE, J. In this case, we are asked to decide whether the Attorney Grievance Commission was authorized to investigate the plaintiff's client trust accounts and, if so, whether the commission was authorized to conduct that investigation by issuing a subpoena duces tecum to the plaintiff prior to the issuance of a formal complaint by the Attorney Discipline Board. We answer both of these questions in the affirmative, and therefore deny respondent's request for superintending control.

I

The plaintiff in this matter is an attorney at law. On September 20, 1985, a request for an investigation of the plaintiff was filed with the Attorney Grievance Commission. The request was filed by the agent of a lessor from whom the plaintiff leased office space. The agent alleged that the plaintiff was delinquent in rent payments and had tendered checks drawn on insufficient funds.

Upon receiving the request to investigate, the Attorney Grievance Administrator examined the account on which the plaintiff's NSF checks were drawn. The October 31, 1985 statement of the account revealed a deposit in the amount of $7,505.21. That amount and the date of deposit corresponded to a money order made payable to the plaintiff who was designated as an "attorney." In addition, the money order contained the notation, "For Trust Acct. Susanna Beroth."

On December 11, 1985, associate counsel for the grievance administrator wrote to the plaintiff, requesting the following information:

Please advise me whether any client trust monies were in the account on which the nonsufficient funds checks were drawn. Please state the precise nature of the account. During the period from May through November, 1985, were there any nonsufficient fund checks drawn on your account other than those which precipitated the grievance?

The plaintiff replied by letter dated December 20, 1985, specifying that 485 checks were drawn on the account from May through November, and that there were eight additional NSF checks which had not precipitated a grievance. The plaintiff also wrote that all of the NSF checks had been paid upon redeposit and that no one but the plaintiff, who was forced to pay $96 in service charges, was harmed by the checks. However, the plaintiff failed to specify whether any client trust monies were in the account.

The grievance administrator responded on April 9, 1986, with a subpoena duces tecum, commanding the plaintiff to appear at the administrator's office with

[a]ny and all records relating to Client Trust Ac-

counts, General Business Accounts, any accounts wherein client monies may be placed, plus records showing receipts and disbursements of client monies from May 1, 1985 to the present.

The plaintiff filed a complaint for mandamus with this Court, which was treated as an order for superintending control, challenging the authority of the commission to issue the complaint. We ordered that the cause be argued and submitted as a calendar matter.

## II. WAS THE ATTORNEY GRIEVANCE COMMISSION AUTHORIZED TO INVESTIGATE THE PLAINTIFF'S CLIENT TRUST ACCOUNTS?

Effective October 1, 1978, the prosecutorial and adjudicative functions of the State Bar Grievance Board were bifurcated. 402 Mich clvi. As a general proposition:

Bifurcation created two separate and independent boards. The Attorney Grievance Commission was established to serve the prosecutorial function in supervising and disciplining Michigan attorneys (GCR 1963, 957); the Attorney Discipline Board performs the adjudicative functions (GCR 1963, 959). [*In re Daggs,* 411 Mich 304, 313; 307 NW2d 66 (1981).][1]

---

[1] In accordance with this general proposition, the Michigan Court Rules provide:

The Attorney Grievance Commission is the prosecution arm of the Supreme Court for discharge of its constitutional responsibility to supervise and discipline Michigan attorneys. [MCR 9.108(A).]

It is further provided:

The Attorney Discipline Board is the adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys. [MCR 9.110(A).]

In addition to general statements of the authority of the Attorney Grievance Commission and the Attorney Discipline Board, the Michigan Court Rules specify certain powers and duties.

The grievance administrator is appointed by the commission and subject to its supervision.[2] Under the Michigan Court Rules:

> The administrator has the power and duty to:
>
> *  *  *
>
> (5) investigate alleged misconduct of attorneys, including serving a request for investigation in his or her own name if necessary;
>
> (6) prosecute complaints the commission authorizes;
>
> *  *  *
>
> (8) perform other duties provided in these rules or assigned by the commission. [MCR 9.109(A).]

The administrator's power to investigate is distinct from his power to prosecute complaints authorized by the commission. The rules do not limit authority of the administrator to misconduct alleged in a request to investigate, but instead extend the authority to any alleged misconduct. This is consistent with the power of the administrator to serve a request for investigation "in his or her own name." See *State Bar Grievance Administrator v McWhorter (On Rehearing)*, 407 Mich 278; 284 NW2d 472 (1979). Thus, the Michigan Court Rules specify a broad grant of power to the administrator to investigate misconduct.

The facts at bar establish that the administrator's investigation of the plaintiff's client trust accounts was well within the power granted by the Michigan Court Rules. The administrator exam-

---

[2] MCR 9.108(D)(1).

ined the account on which the plaintiff's NSF checks were drawn and uncovered a check which was apparently intended for deposit in a client trust account. The check was deposited in the same account upon which the plaintiff's NSF rent checks were drawn.[3] Thus, the administrator's review of the plaintiff's account revealed not only evidence of poor bookkeeping, but also evidence of an improper commingling of client funds.[4]

This evidence does not necessarily establish misconduct on the part of respondent, but, when added to respondent's own admissions of poor bookkeeping, it is certainly evidence of some mismanagement of a client's funds. The administrator cannot be expected to turn his head when confronted with evidence of this kind. The professional disciplinary rules specify that the administrator has both the power and *duty* to investigate misconduct. MCR 9.109. We, therefore, find no impropriety in the further investigation of the plaintiff's client trust accounts by the grievance administrator on behalf of the commission.

---

[3] In fact, one week prior to the deposit discussed below, respondent also wrote a check on the account to "Hamco," the office real estate company whose representative had initially filed the request to investigate.

[4] At the time of these transactions, DR 9-102 provided:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

### III. WAS THE COMMISSION AUTHORIZED TO SUBPOENA THE PLAINTIFF PRIOR TO THE ISSUANCE OF A FORMAL COMPLAINT BY THE ATTORNEY DISCIPLINE BOARD?

The power to discipline members of the State Bar is reserved to the Supreme Court. Const 1963, art 6, § 5. *In re Hague,* 412 Mich 532, 560; 315 NW2d 524 (1982). "The license to practice law in Michigan is, among other things, a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice . . . ." MCR 9.103(A). While responsibility for attorney discipline is ultimately ours, all members of the bar share in the duties imposed by this responsibility. Thus, the court rules themselves provide that "[a]n attorney shall assist the administrator in the investigation, prosecution, and disposition of a request for investigation or complaint filed with or by the administrator." MCR 9.103(C).

As we have acknowledged on prior occasions, attorney discipline is designed for the protection of the public, the courts, and the legal profession. See, e.g., *State Bar Grievance Administrator v Baun,* 395 Mich 28, 37-38; 232 NW2d 621 (1975). Of those three interests, the protection of the public is paramount. Unless a profession is ultimately devoted to public service, the privileges of its membership cannot be reconciled with principles of a democratic society.

Internal regulation of a profession is a most significant privilege. It is, commensurately, the greatest responsibility attached to any profession. It is with this understanding that we must approach all problems of attorney discipline. As, the Washington Supreme Court has explained:

The practice of law has been a profession of the

highest order since its inception and it must continue to be so. Internal investigation and self-discipline are at the very heart of a profession, as distinguished from a trade or business. The bar association's investigation of a complaint is an integral part of the machinery for handling charges regarding the ethics and conduct of the attorneys admitted to practice before this court. Public confidence in the legal profession, and the deterrence of misconduct, require prompt, complete investigations. The process of investigating complaints depends to a great extent upon an individual attorney's coöperation. Without that coöperation, the bar association is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit. Obviously, unless attorneys coöperate in the process, the system fails and public confidence in the legal profession is undermined. If the members of our profession do not take the process of internal discipline seriously, we cannot expect the public to do so and the very basis of our professionalism erodes. [*In re Del H Clark*, 99 Wash 2d 702, 707-708; 663 P2d 1339 (1983).]

The plaintiff in this action challenges the authority of the administrator to require his testimony, as well as the production of his records, by issuing a subpoena duces tecum subsequent to a request to investigate, but prior to the filing of a formal complaint. As in all matters of attorney discipline, we must construe the relevant rules liberally for the protection of the public, the courts, and the legal profession. MCR 9.102(A).

MCR 9.114 is entitled "Action by Administrator or Commission after Answer." MCR 9.114(C)(1) provides:

On request of the administrator or the respondent, the commission may issue subpoenas to require the appearance of a witness or the produc-

tion of documents and other tangible things before the administrator or an investigator *concerning matters then under investigation.* [Emphasis added.]

Despite the reference to "matters then under investigation" and despite the requirement of a liberal construction explicitly set forth in MCR 9.102(A), the plaintiff would construe this rule to preclude the use of an investigative subpoena in the investigative stage of grievance proceedings.

The plaintiff urges this construction by comparing the use of the word "respondent" in MCR 9.114(C)(1) with the use of the word "witness." Adopting a narrow construction of the rule, the plaintiff submits that only witnesses may be subpoenaed under the rule, not respondents such as himself. We find no persuasive reason for concluding that the two words are mutually exclusive so that a "respondent" may not also be a "witness."

We first observe that the professional disciplinary rules define "respondent" as an attorney named in a request for investigation or complaint. MCR 9.101(6). The word "witness" is not defined in the rules. Thus, the rules themselves do not expressly preclude a respondent from also being a witness.

As the plaintiff notes, the professional disciplinary rules do use both the word "respondent" and "witness" in numerous instances. We agree that this use suggests that the two words have different meanings. However, the fact that words have different meanings does not necessarily, or even commonly suggest, that their relationship is antonymous. It is, of course, an elementary rule of construction that words must be given their commonly accepted meanings. *Production Credit Ass'n*

*of Lansing v Dep't of Treasury,* 404 Mich 301, 312; 273 NW2d 10 (1978).[5]

We are aware that a number of our sister states have adopted rules which expressly state that investigative subpoenas are available in attorney grievance proceedings prior to the filing of a formal complaint.[6] In fact, a number of states have authorized random audits of client trust accounts.[7] Since the Michigan rule is not as explicit, it might be argued that the use of investigative subpoenas in this manner was not intended. We are not, however, presented with any evidence that these rules were considered at the time that MCR 9.114(C)(1) was drafted. It seems plausible that the rules were drafted without reference to these states.[8]

The structure and organization of the rules also support the conclusion that investigative subpoenas are available prior to the filing of a formal complaint. The rules sequentially set forth the procedure that governs "Requests for Investiga-

---

[5] Michigan courts have held that principles of statutory construction apply to the Michigan Court Rules. See, e.g., *Issa v Garlinghouse,* 133 Mich App 579, 581; 349 NW2d 527 (1984); *Langell v LaCrosse,* 149 Mich App 179, 181; 385 NW2d 643 (1986).

[6] See, e.g., 1987 Cal Rules of Procedure 532; 7A Colo Rev Stat, Rules of Civ Procedure 246; 1987 Rules Regulating the Florida Bar 3-7.3; 1987 Minn Rules of Court, Professional Responsibility Rules 8(b); 1987 New York Rules of Court, §§ 603.4-603.5; 1988 Texas State Bar Rules, art 10, § 12.

[7] See, e.g., 1987 Rules of North Carolina State Bar, art IX, § 28(2); 1986 Washington Court Rules, Rules on Lawyer Discipline, tit 13, Rules 13.1-13.2.

[8] Looking to the case law of our sister states, we again find no persuasive precedent. In *Mississippi State Bar v Attorney-Respondent,* 367 So 2d 179 (Miss, 1979), it was held that in the absence of an explicit authorization in the Mississippi rules, an investigative subpoena may not be used prior to the initiation of formal proceedings. However, this decision was based upon a narrow construction of the Mississippi rules. A contrary conclusion was reached in *North Carolina State Bar v Speckman,* 57 NC App 116; 360 SE2d 129 (1987). Again, however, the decision was based upon a rather narrow construction of a unique North Carolina rule.

tion," MCR 9.112, "Answer by Respondent," MCR
9.113, "Action by Administrator or Commission
after Answer," MCR 9.114, "Hearing Panel Proce-
dure," MCR 9.115, and "Review of Order of Hear-
ing Panel," MCR 9.118. This structure describes
discrete steps in the disciplinary process. In con-
text, it thus appears clear that reference in Rule
9.114 to matters "then under investigation" was
intended to allow the use of subpoenas in the
investigative phase of disciplinary proceedings.

Under the Michigan rules, either the commis-
sion, the grievance administrator, or hearing pan-
els of the Attorney Discipline Board may issue
subpoenas, though all subpoenas must be issued in
the name and under the seal of the Attorney
Discipline Board, MCR 9.115(I)(1). Under MCR
9.115(B), the issuance of a complaint begins pro-
ceedings before a hearing panel. Since there is no
time in which a complaint has been issued and a
hearing panel is unable to issue a subpoena, once
a complaint has been filed, the administrator may
simply have a subpoena issued through the griev-
ance panel. Thus, the position advanced by the
respondent would render the subpoena power of
the commission and its administrator redundant.
Although it might be argued that the individual
subpoena power of the commission is a matter of
convenience and thus analogous to the power of an
attorney of record under the rules of civil proce-
dure, see MCR 2.506(B)(1), unlike the rules of civil
procedure, the professional disciplinary rules do
not require that a matter be "pending"[9] at the
issuance of the subpoena.

The nature of discovery under the professional

[9] The references in MCR 2.506(B)(1) to "the court in which the
matter is pending" and "attorney of record" might suggest that a
subpoena may only be issued in a civil proceeding after the filing of a
complaint. Cf. *Hartman v Edwards,* 260 Mich 281, 285; 244 NW 474
(1932). See also MCR 2.101(B).

disciplinary rules also indicates that strict limitations on the commission's precomplaint subpoena power is both unwarranted and unwise. Discovery under the professional disciplinary rules, unlike discovery under the rules of civil procedure, is extremely limited during the postcomplaint period. MCR 9.115(F)(4). A demand for written documentation within the control of a respondent must be filed within twenty-one days of service of a formal complaint. MCR 9.115(F)(4)(a). The objects of discovery are limited to the documentary evidence to be introduced by the opposing party and to witness lists. MCR 9.115(F)(4)(a), (b). A deposition may only be taken of a witness living outside of the state or physically unable to attend the hearings. MCR 9.115(F)(4)(c). This scheme indicates that, unlike ordinary civil proceedings, there is little convenience to be gained in disciplinary proceedings by allowing a party to issue a subpoena *after* service of the complaint. More significantly, the professional disciplinary rules require any meaningful investigation by the commission to be completed *prior* to the service of the complaint. A thorough and efficient investigation of these matters is necessary, not only for the protection of the public, but also for the protection of those attorneys who might otherwise be faced with insufficiently investigated accusations.

A liberal construction of the commission's subpoena powers in disciplinary proceedings is consistent with other licensing schemes employed in this state. The Attorney General, for example, has the authority to issue a precomplaint, investigative subpoena under § 16235(1) of the Public Health Code. MCL 333.16235(1); MSA 14.15(16235)(1). See *Attorney General v Bruce,* 422 Mich 157; 369 NW2d 826 (1985). Although we have not had occasion to consider it previously, similar powers ap-

pear to be granted to the Michigan Social Welfare Commission under § 8 of the Social Welfare Act. MCL 400.8; MSA 16.408. There is nothing extraordinary about such authority,[10] nor in our view is it unduly burdensome in a licensing regulatory scheme.[11]

Although the plaintiff has not raised any constitutional challenge to the subpoena, we have considered the possibility that the commission's exercise of its investigative subpoena power might be inconsistent with a respondent's right against self-incrimination under US Const, Ams V, XIV. In our view, however, the very existence of this right weighs against a narrow construction of the commission's power. It is well established that the Self-Incrimination Clause extends to protect attorneys in the course of disciplinary proceedings. *Spevack v Klein,* 385 US 511; 87 S Ct 625; 17 L Ed 2d 574 (1967). Indeed, in *Kastigar v United States,* 406 US 441; 92 S Ct 1653; 32 L Ed 2d 212 (1972), the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination can be asserted in any proceeding. The right to subpoena a witness must not be confused with the right to compel testimony. Only the former is at issue in this matter.

[10] Indeed, one opinion of our Court of Appeals has even upheld the investigative subpoena power of a city ombudsman. *Vance v Ananich,* 145 Mich App 833; 378 NW2d 616 (1985). See also *Woll v Attorney General,* 99 Mich App 749; 299 NW2d 25 (1980), lv den 410 Mich 910 (1981).

[11] Federal licensing schemes also employ the use of investigatory subpoenas. See, e.g., 15 USC 78u(b) and *Securities & Exchange Comm v Vacuum Can Co,* 157 F2d 530 (CA 7, 1946), cert den 330 US 820 (1947) (the purpose of the SEC's subpoena is to discover evidence, not to prove a pending charge, but upon which to make one if the discovered evidence so justifies). See also 47 USC 403, 409(e) and *Federal Communications Comm v Stahlman,* 40 F Supp 338 (D DC, 1971), aff'd 75 US App DC 176; 126 F2d 124 (1942) (upholding the investigative subpoena power of the FCC despite the likelihood that the anticipated policy under investigation would exceed the FCC's authority under its enabling act).

Finally, we are unpersuaded by the suggestion that, if a respondent may also be deemed a witness, we would be faced with the prospect of paying witness fees and mileage to a respondent who is subpoenaed. The professional disciplinary rules provide, in pertinent part, simply that

> [a] subpoenaed witness must be paid the same fee and mileage as a witness subpoenaed to testify in the circuit court.

In turn, the rules of civil procedure provide that either a witness or a party may be subpoenaed, though a subpoena is not required to compel a party to attend a hearing. MCR 2.506(A)(1). Furthermore, it has long been held that a party may be entitled to a witness fee and mileage. *Smith v Smith,* 146 Mich 686; 110 NW 59 (1906).[12]

Thus, we find nothing in the rules of professional disciplinary proceedings which provides, nor do we find any policy reason which persuades us, that a respondent may not also be a witness or that a respondent may not be subpoenaed prior to service of a complaint. Absent a compelling reason for doing otherwise, we are constrained by the rules themselves to adopt a liberal construction for the protection of the public, the courts, and the legal profession. MCR 9.102(A). We are satisfied that our acknowledgment of the commission's investigative subpoena power over this plaintiff effectuates those purposes and therefore correctly applies the rules in this context. Most importantly, we believe that this conclusion is consistent with the constitutional duty of this Court and the pro-

---

[12] Although it may be inequitable to pay a nonprevailing, subpoenaed respondent witness fees and mileage, we note that there is nothing in the disciplinary rules which proscribes an order of costs to the prevailing party.

fessional responsibilities of all members of the Michigan Bar.

### IV. CONCLUSION

Michigan's rules of professional disciplinary procedure vest investigative power in the Attorney Grievance Commission for the protection of the public, the courts, and the legal profession. These rules must be liberally construed in accordance with the remedial purpose they serve. The power of the Grievance Commission to subpoena an attorney prior to service of a formal complaint is both essential to the commission's investigative function and the plain meaning of the rules. The commission's investigation in this matter was authorized by the rules of professional disciplinary procedure. The order of superintending control sought by the plaintiff is therefore denied.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). The question presented is whether the Attorney Grievance Commission may, during the period of investigation and before filing a complaint, require an attorney to appear as a witness and produce documents before the administrator or an investigator concerning the matter under investigation. We would hold that the court rule permitting the issuance of subpoenas to require the appearance of a "witness" and the production of documents does not apply to an attorney under investigation, and that an attorney under investigation may not be required to appear, testify, or produce documents before the hearing on the complaint.

I

Plaintiff is an attorney at law, and is the subject of a request for investigation filed with the Attorney Grievance Commission. The request was filed by the agent of a lessor from whom the plaintiff leased office space, and alleged that the plaintiff was delinquent in rent payments and had tendered checks drawn on insufficient funds. Plaintiff timely answered the request for investigation. He acknowledged that he had tendered NSF checks, attributed this to poor bookkeeping, and stated that the delinquencies had been fully paid.

An attorney for the commission wrote the plaintiff inquiring whether any client trust monies were in the account on which the NSF checks were drawn, and making other inquiries. The plaintiff responded to this request, stating that he had written 485 checks of which eight had been returned NSF, all had been paid upon redeposit and none had been returned to the payee unpaid, and contending that the only person harmed was the plaintiff who had been required to pay $96 in service charges levied by the bank.

Not satisfied with this response, particularly because it did not address the inquiry concerning the possible commingling of client trust monies, the commission issued a subpoena duces tecum directing the plaintiff to appear before the grievance administrator "to give evidence" and to bring with him "any and all records relating to client trust accounts, general business accounts, any accounts wherein client monies may be placed, plus records showing receipts and disbursements of client monies from May 1, 1985, to the present."

Plaintiff filed a complaint for mandamus with this Court which was treated as a complaint for superintending control, challenging the authority

of the commission to issue the subpoena. We ordered that the cause be argued and submitted as a calendar matter.

II

The grievance administrator contends that an attorney has an affirmative duty to coöperate with the disciplinary authorities, and that disclosure of a targeted attorney's files for investigative purposes may be compelled without violation of his constitutional rights.[1]

Plaintiff acknowledges that he is required to coöperate, claims that he has done so, asserts that the inquiry by the administrator concerning the trust fund accounts goes beyond the subject matter of the request for investigation,[2] and that the court rule providing for the issuance of a precomplaint subpoena does not authorize the issuance of a precomplaint subpoena directed to an attorney who is the subject of the inquiry.

The court rule provides that an attorney is required to assist the administrator in the investigation of a complaint.[3] Another rule provides that

[1] See *Kelly v Greason,* 23 NY2d 368; 296 NYS2d 937; 244 NE2d 456 (1968).

In *Spevack v Klein,* 385 US 511, 512; 87 S Ct 625; 17 L Ed 2d 574 (1967), the Supreme Court of the United States held that the privilege against self-incrimination precluded the disbarment of a lawyer from the New York Bar for failing "to honor a subpoena duces tecum served on him in that he refused to produce the demanded financial records and refused to testify at the judicial inquiry." The plaintiff in the instant case has not claimed that the production of the records or his testimony would tend to incriminate him.

[2] The Court has directed the briefing and oral argument of *Doe v Attorney Grievance Comm,* No. 80503, as a calendar case to address the question whether the administrator's power to investigate alleged misconduct under MCR 9.109(A)(5) includes the power to obtain the issuance of subpoenas, provided for in MCR 9.114(C), before a request for investigation has been filed and there has been an opportunity for the respondent (lawyer) to answer concerning the alleged misconduct.

[3] MCR 9.103.

an attorney served with a request for investigation shall file a written answer fully and fairly disclosing all the facts and circumstances pertaining to the alleged misconduct.[4] Still another rule provides that if a complaint is filed against an attorney he shall personally appear at the hearing and is subject to cross-examination.[5]

The rules further provide that during the course of an investigation, the administrator may request a law enforcement office to assist in an investigation,[6] and the commission, upon request of the administrator or the attorney who is the subject of the investigation, may issue subpoenas requiring the appearance of a "witness" and the production of documents concerning the matter under investigation.

The plaintiff contends, and we agree, that the rule does not contemplate the issuance of a pre-complaint subpoena directed to an attorney who is under investigation.

The rule provides:

> On request of the administrator or the respondent, the commission may issue subpoenas to require the appearance of a witness or the production of documents and other tangible things before the administrator or an investigator concerning matters then under investigation.[7]

The word "respondent" as well as the word "witness" is used in this section. The grievance administrator reads this language as if it provided for the issuance of a subpoena to require the appearance of "the respondent or any other witness."

---

[4] MCR 9.113.
[5] MCR 9.115(H).
[6] MCR 9.114(B).
[7] MCR 9.114(C)(1).

It appears that the terminology of chapter 9 of the Michigan Court Rules, concerning professional disciplinary proceedings, was carefully chosen. The term "attorney" refers to all persons licensed to practice law in Michigan.[8] The term "respondent" is defined as an attorney named in a request for investigation or in a complaint.[9] The term "witness" is not defined. The terms "respondent" and "witness" appear a number of times in the rules, and clearly have different meanings.

The court rule provides for the issuance of subpoenas by a hearing panel after the filing of a formal complaint.[10] The rule provides that a subpoenaed witness must be paid the same fee and mileage as a witness subpoenaed to testify in the circuit court.[11] The attorney who is the subject of the complaint is not a subpoenaed witness; he is referred to as the respondent and he is required personally to appear without subpoena.[12]

The obligation of an attorney served with a request for investigation under Rule 9.113 is to answer and to "fully and fairly disclose all the facts and circumstances pertaining to the alleged misconduct." The challenged subpoena is not directed to the "alleged misconduct," but rather to suspicions of as yet uncharged misconduct.[13]

The grievance administrator would liken the powers of the Attorney Grievance Commission to those of the Federal Trade Commission, relying on a decision of the United States Supreme Court which said of the Federal Trade Commission:

[8] MCR 9.101(5).
[9] MCR 9.100(6).
[10] MCR 9.115(I).
[11] *Id.*
[12] MCR 9.115(H).
[13] See n 2.

It has a *power of inquisition,* if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the *Grand Jury,* which does not depend on a case or controversy for power to get evidence but *can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.* When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law. [*United States v Morton Salt Co,* 338 US 632, 642-643; 70 S Ct 357; 94 L Ed 401 (1950). Emphasis added.]

In promulgating MCR 9.114(C)(1), this Court did not intend to repose in the Attorney Grievance Commission inquisitorial or grand jury powers, powers which neither the Attorney General nor any prosecutor possesses. This Court did not intend to empower the grievance administrator to issue a subpoena to a lawyer for the production of documents and examine him under oath before filing a formal complaint.

It appears that the grievance administrator has issued subpoenas directed to the plaintiff's banks and possibly others. In holding that the grievance administrator may not, before filing a formal complaint, issue a subpoena directed to an attorney who is the subject of the inquiry, we do not preclude the filing of a complaint if other evidence would justify the grievance administrator in doing so.[14]

We would grant the complaint for superintending control and quash the subpoena issued to the plaintiff.

CAVANAGH and ARCHER, JJ., concurred with LEVIN, J.

[14] See n 2.