758 A.2d 995

MONTGOMERY COUNTY, Maryland et al.

v.

BROADCAST EQUITIES, INC.

No. 141, Sept. Term, 1998.

Court of Appeals of Maryland.

Sept. 8, 2000.

Judson P. Garrett, Jr., Principal Counsel for Opinions and Advice (Karen L. Federman Henry, Principal Counsel for Appeals, on brief), Rockville, for petitioners.

John C. Lynch (David N. Ventker, Huff, Poole & Mahoney, P.C., on brief), Virginia Beach, VA, for respondent.

Peter J. Petesch, Ford & Harrison LLP and George A. Davidson, Hughes, Hubbard & Reed, LLP, amici curiae for Boy Scouts of America.

Dwight H. Sullivan, Counsel, ACLU of Maryland, Glendora C. Hughes, Gen. Counsel, and Lee D. Hoshall, Asst. Gen. Counsel, Maryland Com'n on Human Relations, amici curiae for petitioners.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

The petitions for a writ of certiorari in this action for a declaratory judgment and injunctive relief present three questions pertaining to the authority of a charter county to prohibit employment discrimination. Montgomery County's petition seeks review of the Court of Special Appeals' holding that the Montgomery County employment discrimination ordinances, which allow the County's Commission on Human Relations to award monetary damages in addition to back pay, conflict with the state statute prohibiting employment discrimination, which restricts the type of damages that can be awarded by the Maryland Commission on Human Relations. Broadcast Equities, Inc.'s cross-petition asks us to decide whether our holding in *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), invalidated the entire Montgomery County statutory scheme prohibiting employment discrimination or merely invalidated the provision which purported to create a new cause of action in the circuit courts. Alternatively, Broadcast Equities contends that, even if the *McCrory* holding was limited to the provision relating to a new circuit court cause of action, the

entire Montgomery County statutory scheme concerning employment discrimination violates Article XI–A of the Maryland Constitution because it does not constitute a "local law."[1]

The instant dispute between Montgomery County and Broadcast Equities also involves numerous other issues which have not been presented to us and which are to be resolved in a separate adjudicatory administrative proceeding now pending before the Montgomery County Commission on Human Relations.

We shall not, under the circumstances of this case, reach the three questions that have been presented by the certiorari petitions. Instead, all of the issues should be resolved in a single case, namely in the administrative proceeding now pending before the Montgomery County Commission on Human Relations and in any circuit court action that may be filed seeking judicial review of a final decision by the County's Commission on Human Relations.[2]

## I.

Before setting forth the facts and arguments in the present controversy, it would be useful to review some of the Montgomery County and the state statutory provisions concerning employment discrimination.

---

**1.** Article XI–A, § 3, of the Maryland Constitution, *inter alia*, grants to the county council of a charter county "full power to enact local laws of said ... County ... upon all matters covered by the express powers granted" to charter counties. If, however, an ordinance enacted by a charter county does not constitute a "local law" within the meaning of Article XI–A, it is beyond the authority of a charter county and, therefore, is unconstitutional. *See McCrory Corp. v. Fowler,* 319 Md. 12, 17–24, 570 A.2d 834, 836 (1990), and cases there cited.

**2.** Issues somewhat similar to the three questions presented by the certiorari petitions in this case were also presented to us in *Prince George's County v. Beretta,* 358 Md. 166, 747 A.2d 647 (2000). We were also unable to reach those issues in *Beretta,* although for a different reason. In *Beretta,* the judgment of the Circuit Court for Prince George's County, upon judicial review of a local agency's decision, was not appealable in light of Maryland Code (1974, 1998 Repl.Vol.), §§ 12–302(a) of the Courts and Judicial Proceedings Article.

Article I, Chapter 27, of the Montgomery County Code (1994 ed.), establishes the Montgomery County Commission on Human Relations and provides for its jurisdiction. The initial sections of Article I, Chapter 27, §§ 27-1 through 27-7B, recite the County's general anti-discrimination policy and set forth the administration, procedures, and duties of the Commission. The remainder of Article I is divided into four divisions, with each addressing a specific area of discrimination, namely in places of public accommodation, in real estate matters, in employment, and racial and religious intimidation. The case at bar concerns the third division, employment, which is codified at §§ 27-17 through 27-26.

Section 27-18(b) of the Montgomery County Code defines "employer" as "any person, wherever situated, who employs more than six (6) employees within the county, ... or who recruits individuals within the county to apply for employment within the county or elsewhere...." Section 27-19(a) makes it an unlawful employment practice for an employer to "fail or refuse to hire or fail to accept the services of or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment" because of, *inter alia,* the "sexual orientation of any individual." Section 27-19(f), however, contains an exception to this prohibition as follows:

"(f) The provisions of this division that prohibit discrimination in employment on the basis of sexual orientation do not apply to:

(1) Positions of employment that are related to religious activities of an employer if:

a. The employer is:

1. A religious corporation, association, or society;

2. An organization that is affiliated with a religious corporation, association, or society; and

b. The primary purpose of the religious activity is not commercial; and

(2) Any position of employment in a religious school."

Section 27–25 of the Montgomery County Code authorizes the awarding of compensatory damages and other relief for employment discrimination, providing in relevant part as follows:

"Upon a finding by the commission panel that there has been a violation of this division, it may order, in its discretion, and if appropriate, the hiring, reinstatement or upgrading of employees, with or without back pay; .... The commission panel may ... also make the following monetary awards determined by the commission panel from evidence of record as the actual damages, costs or losses involved or in such amounts as may be specified below:

(a) The complainant may be awarded damages not exceeding all income that would have been received from an employer or any other source of income, whether or not that employer or source of income is a respondent hereunder.... This category shall also include the monetary equivalent of all sick leave, annual leave, retirement benefits, annuities, health benefits and every other normal and usual employee benefit, lost during the period of violation; provided, however, back pay liability shall not accrue from a date more than two (2) years prior to the filing of a charge with the commission. Interim earnings, unemployment compensation and/or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

Finally, § 27–7(k) generally authorizes the Commission to award various kinds of monetary relief in any case of unlawful discrimination, in addition to the awards provided for in § 27–25 specifically relating to employment discrimination. Section 27–7(k)(4) also provides as follows:

"(4) Damages may also be awarded to compensate complainant or respondent for humiliation and embarrassment suffered in an amount determined by the commission panel to be appropriately and reasonably warranted considering all of the circumstances, but in

no event shall the amount be in excess of one thousand dollars ($1,000.00)."

Article I, §§ 2A–11 and 27–7(g) of the Montgomery County Code authorize an action in the Circuit Court for Montgomery County for judicial review of a final decision by the Commission. Section 2A–11 also authorizes an appeal to the Court of Special Appeals from the Circuit Court's decision in such an action.[3]

The State's anti-discrimination statutes, Code (1957, 1998 Repl.Vol., 1999 Supp.), Art. 49B, §§ 1–39, establish the Maryland Commission on Human Relations and set forth its jurisdiction with regard to discrimination in housing, public accommodations, and employment. In contrast to the employment discrimination provisions in the Montgomery County Code, the state law, although it prohibits employment discrimination on the basis of an individual's race, gender, national origin, and certain other characteristics, does not prohibit employment discrimination because of sexual orientation. *See* Art. 49B, §§ 14 and 16. Another difference between the state and county statutes is that the authority granted to the Maryland Human Relations Commission in the "Enforcement Powers of Commission," Art. 49B, §§ 9–13, is more limited. In proceedings involving employment discrimination, the Maryland Human Relations Commission may award only breach of contract-type damages, including back pay, for a period up to 36 months. Article 49B, § 11(e), provides in relevant part as follows:

"The hearing examiner shall issue and cause to be served upon the respondent an order requiring the respondent to cease and desist from the discriminatory acts and to take affirmative action to effectuate the purposes of the particular subtitle. If the respondent is found to have engaged in or to be engaging in an unlawful employment practice charged in the complaint, the remedy may include, but is

---

**3.** In this respect, the Montgomery County statutory scheme differs from the Prince George's County statutory scheme involved in *Prince George's County v. Beretta, supra,* 358 Md. 166, 747 A.2d 647.

not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief that is deemed appropriate. The award of monetary relief shall be limited to a 36–month period. The complainant may not be awarded monetary relief for losses incurred between the time of the Commission's final determination and the final determination by the circuit court or higher appellate court, as the case may be."

This Court has indicated that the above-quoted language does not authorize the Commission to award "tort damages" such as "punitive damages" or compensatory "damages for 'pain of mental anguish and humiliation.'" *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 625–626, 561 A.2d 179, 190 (1989).

Consequently, in employment discrimination cases, the Montgomery County Commission on Human Relations is authorized by local law to award monetary damages for humiliation and embarrassment up to $1,000, whereas the Maryland Commission on Human Relations, under Art. 49B, § 11(e), is not authorized to award monetary damages for humiliation and embarrassment.

## II.

From 1990 to 1993, Broadcast Equities, Inc., a Virginia corporation and a subsidiary of The Christian Broadcasting Network Inc., operated a radio station in Silver Spring, in Montgomery County, Maryland. In January 1990, the station employed Richard J. Mangus as a senior producer and "on call" control board operator. Mangus's employment was terminated on November 29, 1990. In October 1991, Mangus filed a complaint with the Montgomery County Commission on Human Relations, in which he alleged that he was discriminated against and his employment terminated because of his sexual orientation. The Commission then notified Broadcast Equities of Mangus's complaint, and Broadcast Equities responded by denying any discrimination.

In the summer and fall of 1994, the Commission contacted Broadcast Equities again, stating that its investigation was nearing completion and that the evidence gathered to date supported a finding that unlawful discrimination had occurred in the termination of Mangus's employment. The Commission also asked Broadcast Equities to contact the Commission if it was interested in pursuing a negotiated settlement, which Broadcast Equities declined. On March 23, 1995, the Commission issued a written determination that the record supported Mangus's allegations and that reasonable grounds existed to believe that Broadcast Equities had engaged in an unlawful employment practice, as defined in Chapter 27 of the Montgomery County Code. After subsequent conciliation efforts proved unsuccessful, the Commission's executive director certified the March 1995 determination for a public hearing. The County Attorney filed a Statement of Charges with the Commission, seeking on behalf of Mangus back pay in the amount of $134,592.24 and damages for humiliation and embarrassment in the amount of $1,000.00.

On August 28, 1996, before the Commission's public hearing was scheduled to take place, Broadcast Equities instituted the present action by filing in the Circuit Court for Montgomery County a complaint for a declaratory judgment and injunctive relief against Montgomery County, the Montgomery County Commission on Human Relations, the Commission Hearing Panel, a Commission Hearing Examiner, the County Attorney, and an Assistant County Attorney (hereafter collectively referred to as "the County"). Broadcast Equities did not, however, name Mangus as a defendant, and he has not been a party to this case.

In its complaint, Broadcast Equities asserted that the enforcement of Chapter 27 of the Montgomery County Code against Broadcast Equities would violate its "freedom of association, freedom of religion, and freedom of speech, all as guaranteed by the" First Amendment to the United States Constitution, and would infringe its right to equal protection of the laws and due process of law protected by the Fourteenth Amendment to the United States Constitution. Broad-

cast Equities sought, under the Civil Rights Act of 1871, 42 U.S.C. § 1983, a declaratory judgment and injunctive relief. Broadcast Equities also requested a declaration that the enforcement of Chapter 27 against it would violate its rights to equal protection of the laws, due process of law, freedom of association, freedom of religion, and freedom of speech in violation of the Maryland Constitution. In addition, Broadcast Equities contended that the employment discrimination provisions of the Montgomery County Code had been held unconstitutional in *McCrory Corp. v. Fowler, supra,* 319 Md. 12, 570 A.2d 834, that these provisions violated Article XI–A of the Maryland Constitution, and that the local statutory provisions were inconsistent with state law in several respects. Finally, the employer claimed that the administrative hearing before a panel of the Montgomery County Commission on Human Relations had been scheduled in violation of the time requirements of the Montgomery County Code and that, alternatively, the administrative proceeding is "barred by the equitable doctrine of laches...."

In addition to a declaratory judgment and a permanent injunction, Broadcast Equities requested "an interlocutory injunction enjoining defendants from proceeding with the hearing currently scheduled for September 23, 1996, until such time as all matters raised in this Complaint are addressed by this Court." Attached to the complaint as exhibits were Mangus's complaint filed with the Commission on Human Relations and various other documents in connection with the pending administrative proceeding.

In answering the complaint, the defendants asserted that the Circuit Court "should refuse to exercise jurisdiction over this matter because Plaintiff has failed to exhaust its administrative remedies." The defendants also claimed that the constitutional issues were not ripe for judicial decision, stated that the administrative hearing had been timely scheduled, denied all of Broadcast Equities' contentions relating to the validity of the Montgomery County statutory scheme dealing with employment discrimination, and requested a declaratory

judgment that all of the applicable provisions of Chapter 27 of the Montgomery County Code were valid and enforceable.

Following motions for summary judgment, a hearing was held before the Circuit Court for Montgomery County. Thereafter the Circuit Court granted the defendants' motion for summary judgment, denied the requests for injunctive relief, and rendered a declaratory judgment.[4] The court declared that all of the federal constitutional issues and the action under 42 U.S.C. § 1983 "are premature" and "are not ripe for judicial review, as plaintiff has not been denied any property right or liberty interest protected by the Constitution and laws of the United States." The Circuit Court further declared that, as to the state constitutional issues paralleling the federal constitutional issues (*i.e.*, those involving equal protection, due process, freedom of association, freedom of religion, and freedom of speech), Broadcast Equities must first exhaust its administrative remedies.

The Circuit Court did reach the issues concerning the scope of the holding in *McCrory Corp. v. Fowler, supra,* 319 Md. 12, 570 A.2d 834, concerning Art. XI-A of the Maryland Constitution, and relating to the alleged inconsistency between the pertinent Montgomery County ordinances and state law. The court declared that the applicable Montgomery County statutory scheme had not been invalidated in the *McCrory* case, that the challenged employment discrimination ordinances were local laws authorized by Article XI-A of the Maryland Constitution and the Express Powers Act, Maryland Code (1957, 1998 Repl.Vol.), Art. 25A, and that the challenged ordinances did not conflict with Art. 49B of the Maryland Code or with any other state law.

Upon Broadcast Equities' appeal, the Court of Special Appeals affirmed in part and reversed in part. *Broadcast v.*

---

4. Although the Circuit Court denied Broadcast Equities' request to enjoin the Commission on Human Relations from proceeding with the administrative hearing, by agreement of counsel for both sides, the holding of the administrative hearing has been postponed until the termination of the present case.

*Montgomery County,* 123 Md.App. 363, 718 A.2d 648 (1998). Although recognizing that exhaustion of administrative remedies is not ordinarily required before a court will consider claims under the federal constitution and 42 U.S.C. § 1983,[5] the Court of Special Appeals nevertheless pointed out that a federal constitutional claim must be "ripe" for judicial decision before a court will entertain an action to resolve the controversy.[6] The Court of Special Appeals agreed with the Circuit Court's holding that Broadcast Equities' federal constitutional claims are not ripe for judicial decision. *Broadcast v. Montgomery County, supra,* 123 Md.App. at 398–405, 718 A.2d at 665–668. Furthermore, the Court of Special Appeals affirmed the other portions of the Circuit Court's judgment with one exception. That exception related to the provisions of the Montgomery County Code authorizing the Commission on Human Relations, upon a finding of employment discrimination, to award monetary relief in addition to back pay. The intermediate appellate court held "that, to the extent that

---

**5.** *See Felder v. Casey,* 487 U.S. 131, 146–147, 108 S.Ct. 2302, 2311, 101 L.Ed.2d 123, 143–144 (1988); *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Md. Reclamation v. Harford County,* 342 Md. 476, 492–493, 677 A.2d 567, 575–576 (1996). As pointed out in the *Md. Reclamation* case, however,

"Maryland law recognizes no principle analogous to that set forth in *Felder v. Casey, supra,* 487 U.S. at 146–147, 108 S.Ct. at 2311, 101 L.Ed.2d at 143–144, and *Patsy v. Florida Board of Regents, supra.* Neither the enactments by the General Assembly nor the decisions of this Court dispense with the requirement that administrative remedies be exhausted in actions to enforce rights under the Maryland Constitution or rights under state statutes." *Ibid.*

**6.** *See, e.g., Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998); *Williamson Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126, 139 (1985) ("Because respondent has not yet obtained a final decision regarding the application of the [challenged ordinances] ... to its property, nor utilized the procedures Tennessee provides for [obtaining relief] ..., respondent's claim is not ripe"); *Md. Reclamation v. Harford County, supra,* 342 Md. at 502, 677 A.2d at 580 ("There is a difference between (1) a failure to exhaust administrative remedies, which ordinarily is not required to maintain an action under 42 U.S.C. § 1983, and (2) a failure to show that a governmental administrative official or agency has denied a claimed constitutionally protected ... right, which relates to the merits of the § 1983 cause of action").

County Code, §§ 27–7 and 27–25 authorize the Commission to award monetary relief in addition to back pay, they conflict with State law [*i.e.*, Art. 49B, § 11(e)] and are thus invalid." *Broadcast v. Montgomery County, supra,* 123 Md.App. at 398, 718 A.2d at 664.

As indicated at the beginning of this opinion, the County filed in this Court a petition for a writ of certiorari which raised a single issue, namely whether the provisions of the Montgomery County Code which authorize the Montgomery County Commission on Human Relations, upon a finding of employment discrimination, to award damages beyond back pay, conflict with Art. 49B, § 11(e), of the Maryland Code. Broadcast Equities filed a cross-petition for a writ of certiorari, presenting only two issues. They are:

"1.  Whether this Court in *McCrory Corp. v. Fowler*, 319 Md. 12, 570 A.2d 834 (1990), declared that Montgomery County's anti-employment discrimination ordinance was unconstitutional?

"2.  Whether Sections 27–17 through 27–26 of the Montgomery County Code are 'local laws' under Article XI–A of the Maryland Constitution?"

We granted both the petition and the cross-petition. *Montgomery County v. Broadcast Equities,* 352 Md. 305, 721 A.2d 712 (1998). Our order granting the petition and cross-petition neither narrowed nor enlarged the scope of the issues presented.

### III.

The parties, by presenting to us only three state law questions relating to Article XI–A of the Maryland Constitution and Art. 49B, § 11(e), of the Maryland Code, have substantially limited the issues in this action for declaratory and injunctive relief.[7] To the extent that the other issues

---

7.  Maryland Rule 8–131(b) provides in pertinent part as follows:

    "(b) **In Court of Appeals—Additional limitations.** (1) Prior decision. Unless otherwise provided by the order granting the writ of

which have been raised may ultimately have to be reached, the parties have acquiesced in the holdings of the courts below that those issues must be resolved in the pending administrative proceeding and in any judicial action which may be brought to review a final decision by the Montgomery County Commission on Human Relations. Thus, the various federal constitutional issues, the state constitutional issues paralleling the federal constitutional issues, and the timeliness issue under the Montgomery County Code and the doctrine of laches, will have to be resolved, if at all, in the pending administrative proceeding and in any future judicial review action.[8] Moreover, as the complainant Richard J. Mangus has not been made a party to this action for declaratory and

certiorari, in reviewing a decision rendered by the Court of Special Appeals or by a circuit court acting in an appellate capacity, the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. * * *"

There are a few well-established exceptions to the principle embodied in Rule 8–131(b). One of them is that this Court will address, *sua sponte*, an issue concerning exhaustion of an administrative remedy or primary jurisdiction. *See, e.g., Md. Reclamation v. Harford County, supra,* 342 Md. at 490 n. 10, 677 A.2d at 574 n. 10 (" '[t]he exhaustion or exclusivity of an administrative remedy is ... an issue' which 'an appellate court ordinarily will address even though [it was] not raised by a party,' " quoting *Moats v. City of Hagerstown,* 324 Md. 519, 525, 597 A.2d 972, 975 (1991)); *Montgomery County v. Ward,* 331 Md. 521, 526 n. 6, 629 A.2d 619, 621 n. 6 (1993) (issue of whether administrative remedy was exhausted is an exception to Rule 8–131); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 787, 506 A.2d 625, 631 (1986) ("issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party").

8. Under Maryland law, administrative agencies are fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review. *See, e.g, Josephson v. Annapolis,* 353 Md. 667, 677, 728 A.2d 690, 694–695 (1998); *Holiday v. Anne Arundel,* 349 Md. 190, 199, 707 A.2d 829, 834 (1998) ("the Anne Arundel County Board of Appeals clearly erred in holding that it would not consider Holiday Point's challenge to the validity of § 5–108(e)"); *Md. Reclamation v. Harford County, supra,* 342 Md. at 491–492, 677 A.2d at 575 ("under Maryland law, the Harford County Board of Appeals would be authorized and required to consider any of the constitutional ... issues raised").

injunctive relief, any resolution by us of the three questions presented, adverse to Mangus's interests, would not be binding upon him in the pending administrative proceeding.

■ It should be emphasized that this case is not a statutory or common law action for monetary or other affirmative relief which is independent of, and a concurrent alternative to, the administrative and judicial review remedy provided by Chapter 27 of the Montgomery County Code. *Cf. Zappone v. Liberty Life,* 349 Md. 45, 61–62, 65–68, 706 A.2d 1060, 1068, 1070–1072 (1998); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 19–31, 511 A.2d 1079, 1088–1094 (1986). Instead, the defendant in the Montgomery County administrative proceeding, prior to a final administrative decision and on the eve of the administrative hearing, is attempting to use the Circuit Court's declaratory and equitable jurisdiction solely to abort that administrative proceeding. Under such circumstances, the administrative remedy is primary, with the parties normally being required to exhaust that remedy before resorting to the courts. *See, e.g., Josephson v. Annapolis,* 353 Md. 667, 675–678, 728 A.2d 690, 693–695 (1998); *Zappone v. Liberty Life, supra,* 349 Md. at 63–66, 706 A.2d at 1069–1071; *Md. Reclamation v. Harford County,* 342 Md. 476, 493, 677 A.2d 567, 576 (1996) ("this Court has 'ordinarily construed the pertinent [legislative] enactments to require that the administrative remedy be first invoked and followed' before resort to the Courts").

■ Although the parties in their certiorari petitions raised no issue concerning the need to exhaust the administrative remedy, as previously noted, *supra* n. 7, this is an issue which the Court will address *sua sponte.* The Court of Special Appeals addressed the exhaustion question with regard to some of the state constitutional and state law issues, and concluded that this action fell within an exception to the normal exhaustion rule. The intermediate appellate court relied upon *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979). At the oral argument before us, when the exhaustion question with regard to the non-federal

issues was raised by members of the Court, the parties agreed with the Court of Special Appeals that the action fell within the *Harbor Island Marina v. Calvert Co.* exception to the exhaustion requirement. We, however, disagree.

*Harbor Island Marina v. Calvert Co.* was a declaratory judgment action challenging on its face the validity of a local zoning ordinance enacted by the County Commissioners which zoned and placed restrictions on certain marine facilities such as piers, mooring piles, floats, etc. The plaintiff, which was the operator of a marina subject to the zoning ordinance, instituted an administrative zoning proceeding by filing an application with the appropriate county officials "for a zoning revision," *Harbor Island,* 286 Md. at 306, 407 A.2d at 740. After a final administrative decision denying its application, Harbor Island filed in the Circuit Court for Calvert County an action for judicial review of the administrative decision. While the judicial review action was pending, Harbor Island filed in the Circuit Court for Calvert County a declaratory judgment action raising the single issue of whether state law authorized "the county's power to zone and regulate tidal waters and wetlands within its borders." 286 Md. at 307, 407 A.2d at 740.

Thereafter, in Harbor Island's declaratory judgment action, the Circuit Court declared that Calvert County did have the power under state law to enact the challenged zoning ordinance. Harbor Island took an appeal from the declaratory judgment "and, at the same time, dismissed its [action for judicial review of] the administrative agency's denial of its application for a zoning revision." *Ibid.*[9] The Court of Special Appeals, in an unreported opinion, vacated the declaratory judgment and ordered that the declaratory judgment action be dismissed on the ground that the issue of the County's authority to enact the zoning ordinance should have been decided in

---

9. At this point in its opinion, this Court noted that "[n]either party argues that the dismissal creates any impediment to the present appeal and, therefore, we do not consider any issue which might arise from this action." 286 Md. at 307 n. 5, 407 A.2d at 740 n. 5.

the statutorily authorized judicial review action.[10]   The Court of Special Appeals, *inter alia,* relied upon *Fertitta v. Brown,* 252 Md. 594, 251 A.2d 212 (1969), where, on somewhat similar facts, this Court affirmed an order sustaining a demurrer to a declaratory judgment action on the alternative grounds (1) that the declaratory judgment action was barred by the doctrine of *res judicata* and (2) that "[d]eclaratory proceedings were not intended to and should not serve as a substitute for [judicial] review or as a belated appeal."   252 Md. at 599–600, 251 A.2d at 215.

This Court in *Harbor Island,* however, disagreed with the decision of the Court of Special Appeals and held that the declaratory judgment action was appropriate.   While recognizing the general rule "that when an administrative [and judicial review] remedy is statutorily directed, the nature of the relief specified by the enactment must ordinarily be utilized," the Court went on to point out that " ' "[t]here are few absolutes in the law," ' " *Harbor Island,* 286 Md. at 308, 407 A.2d at 741, quoting *State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 403, 380 A.2d 28, 39 (1977), quoting *Poe v. Baltimore City,* 241 Md. 303, 308, 216 A.2d 707, 709 (1966).   The *Harbor Island* opinion, relying upon language in the *Clark* and *Poe* cases, held that there is a " 'constitutional exception' " to the exhaustion rule which "permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority . . . of the legislative body to adopt the legislation from which relief is sought."   *Ibid.* The Court went on to hold that because the plaintiff's attack "is upon the power or authority *vel non* of the Board of County Commissioners of Calvert County to adopt the ordinance . . . this clearly falls within the 'constitutional exception,' [and] the power to enact is an issue that may be litigated in the Declaratory Judgment Act suit."   286 Md. at 309, 407 A.2d at 741.[11]

---

**10.**  *See Briefs in the Court of Appeals,* Number 10, September Term 1979, Record Extract at E.7 through E.13.

**11.**  The two cases relied upon by the *Harbor Island* opinion for its decision were *State Dep't of A. & Tax. v. Clark* and *Poe v. Baltimore City.*

Since *Harbor Island*, this Court has emphasized that the so-called "constitutional exception" to the normal rule that primary administrative and judicial review remedies must be followed is very "narrow." [12] Our subsequent opinions have significantly limited the scope of that exception. For example, in *Goldstein v. Time–Out Family Amusement*, 301 Md. 583, 483 A.2d 1276 (1984), the owner and operator of family amusement centers, aggrieved by the assessment upon it of admission and amusement taxes, filed a declaratory judgment action challenging the constitutionality, on their face, of certain statutory exemptions to the tax. The plaintiff argued that these exemptions were not severable from other parts of the admission and amusement tax statutes, and that, therefore, the assessment against it was invalid. It was contended that specified exemptions were facially invalid under state and

---

*State Dep't of A. & Tax v. Clark*, 281 Md. 385, 380 A.2d 28, involved a challenge, on constitutional grounds, to a property tax assessment, and the taxpayers had previously, without success, invoked and exhausted the statutorily prescribed administrative and judicial review remedies for challenging assessments. Thereafter, the taxpayers filed with the appropriate administrative officials a request under then Maryland Code (1957, 1975 Repl.Vol.), Art. 81, § 67, which granted discretionary authority to the administrative officials to "decrease or abate an assessment after the date of finality ... to prevent injustice...." Section 67 did not provide for judicial review of the administrative decision. The administrative officials denied the request under § 67, and the taxpayers filed a declaratory judgment action to judicially review the denial. This Court held that there was no right to judicial review of a decision under § 67, and that § 67 itself was constitutional. The trial court was directed to enter judgment in favor of the administrative officials. In *Clark*, the declaratory judgment action was not being used as an alternative to administrative and judicial review proceedings. Instead, the declaratory judgment action was being used as a judicial review action, and this Court held that the administrative decision was not judicially reviewable.

In *Poe v. Baltimore City*, 241 Md. 303, 216 A.2d 707, property owners, without exhausting administrative remedies, filed a declaratory judgment action challenging the constitutionality of a zoning ordinance. This Court affirmed the trial court's judgment sustaining a demurrer to the bill of complaint, holding that the property owners were required to invoke and exhaust the statutorily prescribed administrative remedies.

**12.** *See, e.g., Holiday v. Anne Arundel, supra*, 349 Md. at 201, 707 A.2d at 835; *Insurance Commissioner v. Equitable*, 339 Md. 596, 621, 664 A.2d 862, 875 (1995).

federal equal protection and due process principles, as well as the state constitutional provision regarding uniformity in taxation. The plaintiff had failed to invoke and exhaust the statutorily prescribed administrative and judicial review remedies for challenging the assessment, relying upon the so-called constitutional exception and *Harbor Island.* After pointing out that, to come within the constitutional exception, "the attack must be made to the constitutionality of the statute as a whole," *Goldstein,* 301 Md. at 590, 483 A.2d at 1280, this Court continued (*ibid.*):

"Although Time–Out originally claimed to attack the exemption statute in its entirety, it is clear to us that its real protest focused upon the statutory exemptions granted to recreational businesses, and not upon the exemptions for non-profit and charity institutions which are also contained in § 406. At trial, Time–Out conceded it was not attacking the non-profit and charity exemptions. Thus, we believe Time–Out conceded it was not attacking the General Assembly's legislative power to enact exemptions to a general taxation scheme. It merely attacked certain exemptions granted to businesses similar to its own. Absent an attack upon the legislative power, Time–Out must exhaust its administrative remedies (pursuant to § 407) before seeking a judicial determination."

This Court has also held that the *Harbor Island* constitutional exception has no application where there exists no recognized statutory, common law, or equitable alternative to the statutorily prescribed administrative and judicial review remedies. In other words, where the only recognized avenue for relief is the administrative and judicial review proceedings, the claimant may not circumvent those proceedings by a declaratory judgment or equitable action even where the validity of an enactment on its face is the issue. *See, e.g., Bowman v. Goad,* 348 Md. 199, 703 A.2d 144 (1997); *Insurance Commissioner v. Equitable,* 339 Md. 596, 623, 664 A.2d 862, 876 (1995); *Potomac Elec. Power v. P.G. County,* 298 Md. 185, 468 A.2d 325 (1983) (constitutional challenge to a tax statute on its face, and this Court held that, because the tax

had been paid, the exclusive remedy was the statutorily mandated administrative refund proceeding); *Apostol v. Anne Arundel County,* 288 Md. 667, 674–675, 421 A.2d 582, 586 (1980) ("The plaintiff taxpayers argue that because their suit 'is an attack upon the validity of an enactment as a whole, . . . clearly the controversy falls within the "constitutional exception" to exhausting administrative remedies.' . . . Principal reliance is placed upon *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979). . . . [T]hose cases were not concerned with a situation where the *only* relief available is the special administrative and judicial review remedy provided by statute").

■  Similarly, where the legislature has expressly provided or intended that the administrative and judicial review remedy be the "exclusive" remedy, the exception recognized in *Harbor Island* is inapplicable, and a declaratory judgment or equitable action challenging the validity of an enactment "as a whole" will not lie. *Josephson v. Annapolis, supra,* 353 Md. at 674–678, 728 A.2d at 693–696; *Holiday v. Anne Arundel,* 349 Md. 190, 201–204, 707 A.2d 829, 834–836 (1998); *Zappone v. Liberty Life, supra,* 349 Md. at 60–62, 706 A.2d at 1067–1069.

■  In addition, the constitutional exception to the exhaustion requirement does not apply when the constitutional challenge to a statute "as a whole" involves the need for some factual exploration, which may be necessary when statutory classifications are challenged on equal protection grounds or under Article 46 of the Maryland Declaration of Rights. *See Insurance Commissioner v. Equitable, supra,* 339 Md. at 623–624, 664 A.2d at 876, and cases there cited.

Moreover, the few cases in this Court over the past fifty years which have actually applied the constitutional exception have generally involved the situation where the decision in the declaratory judgment or equitable action, whether for the plaintiff or for the defendant, will terminate the controversy and make subsequent administrative and judicial review proceedings unnecessary.

For example, in *National Asphalt v. Prince Geo's Co.*, 292 Md. 75, 437 A.2d 651 (1981), a former employee of National Asphalt instituted administrative proceedings by filing a complaint with the Prince George's County Human Relations Commission, asserting that her employment had been terminated because of unlawful gender discrimination. The employer refused to cooperate with or participate in the administrative investigation and proceeding; thus, the employer did not, in the administrative proceeding, contest the allegations.[13] Instead, the employer filed a declaratory judgment action raising a single argument, namely that the entire portion of the Prince George's County Code relating to employment discrimination was invalid because the area had been preempted by state law. The employer asserted both preemption by conflict and preemption by occupation, but at no time raised any other issues. As far as can be determined from this Court's opinion and the briefs, once the question of preemption was resolved in the declaratory judgment action, the underlying controversy was over.

In the *Harbor Island* case itself, the only issue was whether the County Commissioners of Calvert County had the power, under state law, to zone the area and the facilities involved. The plaintiff's brief in this Court thus stated (*Briefs in the Court of Appeals*, Number 10, September Term 1979, appellant's brief at 32):

"Essentially, appellant decided to put all its' eggs in one basket and filed a declaratory judgment action narrowing the question to one justiciable issue, a question of legislative jurisdiction, a question that had been raised in its timely appeal of the denial of its petition for rezoning. Appellant made it known that it would pursue this issue in forbearance of all other issues it had appealed and in fact has done so by dismissing the appeal for the denial of the petition for rezoning and pursuing this one. Judge Bowen, having both cases before him and being aware of the issue and the

---

**13.** *See Briefs in the Court of Appeals,* Number 14, September Term 1981, appellant's brief at 3.

situation at hand, agreed that declaratory judgment was appropriate. There is no concern with the effect of res judicata here as there was in the case of *Lawrence N. Brandt, Inc. v. Montgomery County Commission on Landlord Tenant Affairs,* 39 Md.App. 147 [383 A.2d 688] (1970[1978]) and *Fertitta v. Brown,* 252 Md. 594, 251 A.2d 212 (1969)."

There could be no subsequent administrative and judicial review proceedings in the *Harbor Island* controversy, as the administrative and judicial review proceedings had already taken place and had terminated.

*Pressman v. State Tax Commission,* 204 Md. 78, 102 A.2d 821 (1954), is an illustration of the type of case which is most appropriate for resolution by a declaratory judgment action under the "constitutional exception." The *Pressman* case in this Court encompassed two appeals in two declaratory judgment actions challenging the constitutionality of Ch. 783 of the Acts of 1953, which reduced the franchise tax on mutual savings banks situated in Maryland. The challenges to the statute were not made by franchise tax taxpayers (*i.e.,* mutual savings banks) who would be the parties involved in any administrative and judicial review tax proceedings and who, of course, benefitted from Ch. 783. Instead, the plaintiffs in the declaratory judgment actions were the Mayor and City Council of Baltimore and a citizen and general taxpayer of Baltimore City. Furthermore, the constitutional challenge to Ch. 783 did not involve any of the substantive tax provisions which Ch. 783 enacted into the tax law and which would be administered by the administrative tax officials and agencies. Instead, the only challenge to Ch. 783 was that the title of the statute was not descriptive of the body of the statute as required by Article III, § 29, of the Maryland Constitution.

The defendants in *Pressman* raised the issue of whether the declaratory judgment actions were appropriate or whether the validity of Ch. 783 should be resolved in some future administrative proceeding before the State Tax Commission and judicial review proceeding before a circuit court. In holding

that the declaratory judgment action was appropriate, this Court initially stated (204 Md. at 83, 102 A.2d at 824):

"It has long been the policy of the State of Maryland to disapprove of the by-passing of administrative action, especially where such action is within the expert knowledge of the administrative agency, except where there is a clear necessity for a prior judicial decision."

The Court then pointed out that the title issue did not involve anything "within the sphere of the agency's expertness." 204 Md. at 84, 102 A.2d at 825. This Court then concluded (*ibid.*):

"We specifically hold that the constitutionality of a statute may be challenged in a declaratory judgment action on the ground that the title of the statute is not descriptive of the body, as required by the State Constitution."

In *Pressman,* whichever way this Court may have decided the single constitutional issue, the legal controversy between the plaintiffs and the defendants would be over. In fact, it is unlikely that the same type of issue would arise in administrative and judicial review tax proceedings between mutual savings banks and tax officials or agencies. The exercise of judicial jurisdiction in the *Pressman* declaratory judgment actions did not result in multiple or duplicative proceedings. In addition, the constitutional issue presented in the declaratory judgment suits did not involve the specific provisions of the tax code which were administered by the administrative officials. Finally, the *Pressman* Court indicated, 204 Md. at 83, 102 A.2d at 824, that there was as a threshold matter "a clear necessity" for judicial resolution of the question whether the General Assembly had validly enacted the tax reduction statute.

By contrast, this Court's resolution of the three state law issues presented to us in the case at bar will not terminate the instant controversy. If those three issues were to be decided in the County's favor, there would still remain numerous federal and state constitutional issues and state non-constitutional issues to be resolved in the pending administrative proceeding. And if those three issues were to be decided in

Broadcast Equities' favor, the decision would not be binding upon the former employee Mangus who has not been made a party to this case, and who might well insist that the administrative proceeding go forward. In addition, there was never any necessity for the present action. The only effects of the judiciary's entertaining this declaratory judgment and equitable action have been to delay the resolution of the controversy, to have two separate cases when the matter could be resolved in a single case, to increase the expenses of the litigants, and to waste valuable judicial and governmental resources.

Furthermore, if this action had been dismissed by the Circuit Court, and if the administrative hearing had taken place, the Montgomery County Commission on Human Relations might have found, on the facts, that no unlawful employment discrimination had taken place. If such decision were supported by substantial evidence, there would be no need to reach any of the constitutional issues raised by Broadcast Equities. Applying the so-called "constitutional exception" under circumstances like these is inconsistent with the firmly established principle of Maryland law " 'that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground,' " *Ashford v. State*, 358 Md. 552, 561, 750 A.2d 35, 40 (2000), quoting *State v. Lancaster*, 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993). *See, e.g., Harryman v. State*, 359 Md. 492, 503 n. 6, 754 A.2d 1018, 1024 n. 6 (2000); *Thrower v. Support Enforcement*, 358 Md. 146, 149 n. 2, 747 A.2d 634, 636 n. 2 (2000); *Dorsey v. State*, 356 Md. 324, 342, 739 A.2d 41, 51 (1999), and cases there cited.

Consequently, in addition to the previously discussed limitations upon the constitutional exception to the normal rule that primary administrative and judicial review remedies must be exhausted, we hold that the constitutional exception should only be applied when the decision on the facial validity of an enactment is likely to terminate the controversy and will not result in a duplication of adjudicatory proceedings. The case at bar failed to meet this standard. After the Circuit Court determined that the federal constitutional issues were not

"ripe" for judicial decision, the action should have been dismissed.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE ACTION. EACH SIDE TO PAY ITS OWN COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.*