Dear Mayor Butler:
You have requested our opinion on whether the Easton Town Council may, by ordinance, grant subpoena power to a municipal administrative agency. We understand that, during discussions concerning the creation of a local human relations commission, the question arose whether a Town ordinance could grant such a commission subpoena power for purposes of its investigations and proceedings.
Your request was accompanied by a well-researched opinion by the Town Attorney which concluded that, although the Town has authority to create such a commission, it lacks authority to grant subpoena power, absent express statutory authority from the General Assembly. The Town Attorney also submitted an opinion of outside counsel that reached the same conclusion.
We respectfully disagree with the conclusion of those opinions.[1] In our view, the Town may establish a local human relations commission pursuant to its police powers; implicit in that authority is the power to grant the commission subpoena power, if the commission is to carry out investigative and adjudicative functions.
 I Local Human Relations Commissions
At least thirteen local governments in the State have enacted ordinances establishing local human relations commissions.[2] Local governments with home rule, namely charter counties and municipal corporations, have established commissions under their home rule authority — more specifically, through police power delegated by the State. Enabling legislation by the General Assembly was necessary to create commissions in counties without home rule.
There are no reported cases discussing the authority of a municipality to create a human relations commission. However, civil rights ordinances of charter counties have been upheld by the Maryland appellate courts as valid exercises of county police power under the Express Powers Act.[3]
See, e.g., Montgomery Citizens League v. Greenhalgh, 253 Md. 151,252 A.2d 242 (1969) (Montgomery County fair housing ordinance); Holiday Universal Club v. Montgomery County, 67 Md. App. 568, 508 A.2d 991, cert. denied, 307 Md. 260, 513 A.2d 314 (1986), appeal dismissed,479 U.S. 1049 (1987) (Montgomery County public accommodations ordinance).
Of course, a charter county's police power is not unlimited. For example, a charter county may not enact legislation that conflicts with State law or legislate in an area that has been preempted by the State.[4]
And, while a charter county has concurrent authority with the State to prohibit employment discrimination, see, e.g., National Asphalt Pavement Ass'n v. Prince George's County, 292 Md. 75, 437 A.2d 651
(1981), a county may not create a private cause of action to remedy such discrimination. McCrory Corp. v. Fowler, 319 Md. 12, 570 A.2d 834
(1990). While questions remain on the remedies a charter county may create by ordinance to redress illegal discrimination,[5] there is no doubt that, as a general proposition, the police power enables charter counties to enact local anti-discrimination ordinances, to establish local human relations commissions, and to provide for the administrative adjudication of complaints and the imposition of sanctions. See Montgomery Citizens League v. Greenhalgh, supra; Holiday Universal Club v. Montgomery County, supra.
Although the Maryland cases to date have involved ordinances enacted by charter counties,[6] the police power of a municipal corporation is at least equal in scope. Municipal corporations have broad home rule powers pursuant to Article XI-E, § 3 of the State Constitution and Article 23A of the Annotated Code of Maryland. Birge v. Town of Easton,274 Md. 635, 644, 337 A.2d 435 (1975); Southland Corp. v. City of Laurel, 75 Md. App. 375, 379, 541 A.2d 653 (1988). Article 23A, § 2(a) provides, in part:
 The legislative body of every incorporated municipality in this State . . . shall have general power to pass such ordinances not contrary to the Constitution of Maryland, public general law, or, except as provided in § 2B of this article, public local law as they may deem necessary in order to assure the good government of the municipality, to protect and preserve the municipality's rights, property, and privileges, to preserve peace and good order, to secure persons and property from danger and destruction, and to protect the health, comfort and convenience of the citizens of the municipality . . . .
(Emphasis added). This grant of authority is much the same as the police power granted charter counties pursuant to Article 25A, § 5(S).[7]
73 Opinions of the Attorney General 157, 158 n. 2 (1988). It constitutes an "express sharing of the State's `police power,' that authority, inherent in the General Assembly, `to prescribe, within constitutional limitations, reasonable regulations which are necessary to protect the public health, comfort, order, safety, convenience, morals and general welfare.'" 62 Opinions of the Attorney General 523, 525 (1977) (internal citations omitted).[8] In similar terms, Easton's municipal charter grants the Town Council authority to enact ordinances "for the protection and preservation of peace and good order [and] for the protection and promotion of the health, safety, comfort, convenience, and happiness of the residents and employees of the town . . ." Charter of Town of Easton, Article II, § 16, reprinted in 3 Municipal Charters of Maryland.
Thus, a municipal corporation like Easton has authority under its police power to establish a human relations commission. See also 2 Stevenson, Antieau on Local Government § 29.02 (2d ed. 2001) (surveying case law in various jurisdictions holding that local governments, including municipalities, may enact anti-discrimination laws).
The material submitted to us did not describe scope of the proposed human relations ordinance nor the remedies that a Town commission might employ. For purposes of this analysis, we assume that the ordinance and available remedies would be within the Town's police powers and not in conflict with State law. Although the functions assigned to local human relations commissions vary, many have investigatory and administrative enforcement responsibilities.[9] An enforcement process generally involves the filing of a complaint with the commission, an investigation by staff, and an effort at conciliation. If informal resolution is not successful, the process may provide for further investigation and administrative adjudication. The question you pose is whether a municipal corporation establishing a local human relations commission may grant the commission subpoena power to carry out these functions.
 II Subpoena Authority
A subpoena is a formal direction to an individual or entity to testify or to produce specified records or items before the tribunal authorizing the subpoena.[10] See Black's Law Dictionary 1440 (7th ed. 1999) ("a writ commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply"). The Court of Appeals has adopted a three-part test for determining the validity of an administrative subpoena: (1) whether the inquiry is authorized by statute, (2) whether the information sought is relevant to the inquiry, and (3) whether the demand is sufficiently definite and not overboard. Banach v. State Comm'n on Human Relations, 277 Md. 502, 506, 356 A.2d 242
(1976), citing Okla. Press Pub. Co. v. Walling, 327 U.S. 186, 208
(1946).[11] Your inquiry pertains to the first aspect of that test, that is, whether a local civil rights ordinance enacted under municipal police power may authorize a human relations commission to issue subpoenas.
The Court of Appeals has not directly addressed the authority of a local government to grant subpoena power to a local agency or official without express statutory authority from the General Assembly. However, the Court has recognized that a local ordinance may create procedural rights in the courts. See, e.g., Kant v. Montgomery County, 365 Md. 269,778 A.2d 384 (2001) (county administrative procedure act could provide for appeal to Court of Special Appeals from circuit court review of county agency decision); McCrory, 319 Md. at 20 (county ordinance could provide for judicial review of county agency decision). Similarly, with respect to the enforceability of a local human relations commission order, the Court of Special Appeals has explained: "[the police power] encompasses the authority to provide for the enforcement of Commission decisions and orders in the circuit court." Broadcast Equities, Inc. v. Montgomery County, 123 Md. App. 363, 391, 718 A.2d 648 (1998), vacated on other grounds, 360 Md. 438, 758 A.2d 995 (2000).
A review of existing civil rights ordinances enacted by charter counties and municipal corporations in Maryland reveals that the majority of those ordinances confer subpoena power on the local human relations commission. While certainly not controlling, this practice indicates a widely held belief that a local governing body may grant subpoena power to a local human relations commission.
Courts in other jurisdictions have reached differing conclusions on whether home rule includes the implied authority to grant subpoena power when necessary to the functions of a local agency. Compare Bloom v. City of Worcester, 363 Mass. 136, 293 N.E.2d 268 (1973) (city's establishment of human relations commission and grant of subpoena power to the commission authorized by broad home rule provisions) and Vance v. Ananich, 145 Mich. App. 833, 378 N.W.2d 616 (1985) (home rule act permitted grant of subpoena power to municipal ombudsman pursuant to municipal charter) with Appeal Board of Dep't of Environmental Control of Chicago v. United States Steel Corp., 48 Ill.2d 575, 272 N.E.2d 46 (1971) (subpoena power not to be implied in city's legislative authority), and City Council of West Haven v. Hall, 180 Conn. 243, 429 A.2d 481 (1980) (grant of police power to municipality not to be read so expansively as to include grant of subpoena power).
In a case involving the authority of the Maryland Human Relations Commission to issue a subpoena in connection with a preliminary investigation under State law, the Court of Appeals cited, with approval, out-of-state authority that the "power to investigate `necessarily implies the use of . . . subpoena authority.'" Banach,277 Md. at 511 (internal citations omitted). "`When investigative and accusatory duties are delegated by statute to an administrative body, it . . . may takes steps to inform itself as to whether there is probable violation of the law.'" Id. at 512, citing United States v. Morton Salt Co., 338 U.S. at 642-643. That reasoning is consistent with the conclusion that a local government with home rule powers may confer subpoena power.
In a similar vein, this Office concluded in a 1989 opinion that a public local law that authorized the County Commissioners of Frederick County to create a Human Relations Department with investigatory and adjudicative functions justified the inclusion of subpoena power in the implementing ordinance, notwithstanding the absence of an express reference to subpoena power in the statute. Opinion No. 89-029 (August 10, 1989) (unpublished). That opinion recognized that, as a general legal principle, "[a]n administrative agency possesses no inherent power to issue subpoenas. It may do so only as authorized by statute." Id. at 2, citing 1 Cooper, State Administrative Law 295 (1965); see also 73 C.J.S. Public Administrative Law and Procedure §§ 82, 83. However, "even if subpoena power is not expressly conferred, it may be implied if `essential to the fulfillment of the objectives of the statute.'" Opinion No. 89-029 at 3, citing Application of Combs, 254 N.Y.S.2d 143, 145
(Sup.Ct. 1964). The opinion reasoned that "it is difficult to see how the Human Relations Department would be able to carry out its investigatory and adjudicatory duties fully if it did not have the means to obtain necessary information about a particular complaint." Id. at 3-4.[12]
In a 1981 opinion, Attorney General Sachs similarly concluded that the legislative direction in the Maryland Public Ethics Law that local governments establish local public ethics ordinances implicitly included the authority to provide for the administration and enforcement of those ordinances.[13] 66 Opinions of the Attorney General 197 (1981). "[G]eneral enforcement power is `necessarily or fairly implied in or incident to' the grant of express powers, for, without enforcement, local laws and ordinances would be largely meaningless." Id. at 202 (internal citation omitted). On the other hand, the power to levy a fine, penalty, or forfeiture "depends on an express grant from the General Assembly." Id. at 197.
A local human relations commission, charged by a municipal corporation with investigating complaints and conducting administrative proceedings to enforce a civil rights ordinance, cannot effectively discharge its responsibilities without the legal tools necessary to gather relevant facts. Some of those with information critical to the resolution of a complaint will voluntarily cooperate with a local commission. But this will not always be the case. Thus, "[t]he only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so." Banach, 277 Md. at 511-12, citing United States v. Morton Salt Co., 338 U.S. 632, 642 (1950).
In sum, under its police power, a municipal corporation may not only establish a local human relations commission, but also by necessary implication may endow that commission with the subpoena power necessary to carry out its charge.[14] Without the ability to compel testimony or production of evidence, the local commission's duty to investigate unlawful discrimination may well be "reduced to a meaningless gesture." Banach, 277 Md. at 512; see also Vance v. Ananich, 145 Mich. App. 833,839, 378 N.W.2d 616 (1985) (without subpoena authority, municipal ombudsman would become "a kind of toothless tiger").[15]
 III Conclusion
The Town of Easton, pursuant to its police power, may enact a local civil rights ordinance that establishes a human relations commission and grants that commission subpoena power necessary to carry out any investigatory and adjudicatory functions assigned to the commission.
J. Joseph Curran, Jr., Attorney General
William R. Varga, Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] The opinions of both the Town Attorney and the Town's outside counsel rely primarily on the oft-cited principle known as Dillon's Rule:
 It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others:
 First: Those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation — not simply convenient, but indispensable.
Smith v. Edwards, 292 Md. 60, 69, 437 A.2d 221 (1981), citing J. Dillon, Municipal Corporations § 89 at 145 (4th ed. 1890) (emphasis in original). While the opinions cite a number of Maryland cases that recognize Dillon's rule, none of those cases addresses the grant of police power to municipal corporations.
[2] This number is based on information posted on the website of the Maryland Commission on Human Relations: www.mchr.state.md.us/humrights.html. Although local governments have employed various names — e.g., "community relations commission" or "human rights commission" — we use the term "local human relations commission" throughout this opinion for consistency. Of course, the responsibilities and authority of local commissions vary according to local law.
[3] The Express Powers Act, enacted by the General Assembly under Article XI-A of the State Constitution, includes a broad grant of authority to charter counties commonly referred to as the "police power":
 The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.
 Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law; provided, however, that no power to legislate shall be given with reference to licensing, regulating, prohibiting or submitting to local option, the manufacture or sale of malt or spirituous liquors.
Annotated Code of Maryland, Article 25A, § 5(S) (emphasis added).
[4] Article XI-A, § 3 of the State Constitution provides, in part, that "in case of any conflict between [a] local law [enacted by a charter county] and any Public General Law . . . the Public General Law shall control."
[5] See Beretta U.S.A. Corp. v. Santos, 122 Md. App. 168, 712 A.2d 69
(1998) (local civil rights ordinance could not authorize administrative monetary relief in excess of back pay permitted under State law), vacated on other grounds, 358 Md. 166, 747 A.2d 647 (2000); Broadcast Equities Inc. v. Montgomery County, 123 Md. App. 363, 718 A.2d 648 (1998) (same), vacated on other grounds, 360 Md. 438, 758 A.2d 995 (2000).
[6] Apparently, none of the counties that has adopted code home rule under Article XI-F of the Constitution has established a local human relations commission. It is notable that the statute conferring on code counties many of the express powers of charter counties does not include the police power granted to charter counties under Article 25A, § 5(S). See Annotated Code of Maryland, Article 25B, § 13.
[7] Explicit references to civil rights legislation in statutes pertaining to counties do not justify a distinction between the authority of charter counties and that of municipal corporations to create human relations commissions.
Two paragraphs of Article 25A, § 5(A) authorize charter counties to impose fines or penalties within certain limits to enforce local anti-discrimination laws. These relatively recent additions to the Express Powers Act do not address the underlying authority of a county to enact anti-discrimination laws. Rather, these provisions were apparently designed to permit the creation of penalty provisions with maximum fines in excess of the $1000 limit applicable to violations of other local ordinances. See Chapter 278, Laws of Maryland 1995, codified at Article 25A, § 5(A)(4) ($5,000 limit on fines for violations of local laws forbidding discrimination in employment and public accommodations); Chapter 566, Laws of Maryland 1991, codified at Article 25A, § 5(A)(3) (limit on fines for violation of local fair housing law set by reference to federal fair housing law).
Article 49B, § 42 creates a private right of action for violations of county civil rights ordinances in three charter counties: Howard, Montgomery, and Prince George's. This provision was enacted in response to a Court of Appeals decision holding that the counties themselves could not create such a cause of action because it was not a matter of "local law." See McCrory Corp. v. Fowler, 319 Md. 12, 570 A.2d 834 (1990). While the McCrory decision held that a county could not create a private remedy, it left undisturbed prior decisions recognizing the right of a charter county under its police power to enact civil rights legislation generally.
[8] Like a charter county, a municipal corporation may not enact an ordinance that conflicts with State law. See Maryland Constitution, Article XI-E ("All charter provisions, or amendments thereto, . . . shall be subject to all applicable laws enacted by the General Assembly . . ."); Annotated Code of Maryland, Article 23A, § 2(a) (municipal ordinances may not be "contrary to the . . . public general law" of the State).
[9] Some human relations commissions help aggrieved individuals file complaints with other appropriate agencies, provide alternative dispute resolution services, and serve as forums for discussion of local civil rights issues, but do not have investigatory or enforcement responsibilities. See, e.g., Annotated Code of Maryland, Article 49B, § 44-51 (St. Mary's County Human Relations Commission).
[10] For a history of the subpoena power, see State Comm'n on Human Relations v. Baltimore County, 46 Md. App. 45, 46-48, 415 A.2d 856
(1980).
[11] The United States Court of Appeals for the Fourth Circuit has articulated the standard slightly differently: (1) the issuing agency must make a threshold showing that the subpoena is within the agency's authority, (2) the agency has satisfied statutory requirements of due process, and (3) the information sought is relevant and material to the agency's investigation. Equal Employment Opportunity Comm'n v. Maryland Cup Corp., 785 F.2d 471, 475, cert. denied, 479 U.S. 815 (1986).
[12] A subsequent opinion revisited the same public local law. 76 Opinions of the Attorney General 137 (1991). That opinion concluded that, unlike enforcement power, the creation of specific remedies required specific legislative authority.
[13] The State Ethics Commission has subpoena power pursuant to Annotated Code of Maryland, State Government Article ("SG"), § 15-207. The Maryland Public Ethics Law requires counties and municipal corporations to adopt ethics laws similar in scope to the State law, but does not explicitly incorporate subpoena authority. See SG §§ 15-801 through 15-808.
[14] As noted by the Town Attorney, the General Assembly has explicitly conferred subpoena power on local zoning boards of appeal. See Annotated Code of Maryland, Article 66B, § 4.07(c)(3) (chairman of a board of appeals to "administer oaths and compel the attendance of witnesses"). However, we do not believe that the explicit authorization of subpoena power in Article 66B means that a home rule jurisdiction has no implicit authority to confer subpoena power on its agencies in other contexts. Moreover, Article 66B is not limited to municipal corporations, but also applies to counties that have not adopted charter home rule and that do not have the police power that permits creation of a human relations commission.
[15] The General Assembly has concurrent authority to legislate with respect to judicial enforcement of a subpoena issued by an administrative agency of a local government, notwithstanding home rule. See Letter of Assistant Attorney General Robert A. Zarnoch to the Honorable Joseph F. Vallario, Jr. (November 16, 2001).
 *Page 66